STATE OF NORTH CAROLINA v. ROBERT LEE WITHERSPOON

No. 15

(Filed 11 October 1977)

1. Criminal Law § 104— nonsuit motion—consideration of evidence

Upon a motion for judgment of nonsuit in a criminal action, all of the evidence favorable to the State, whether competent or incompetent, must be considered, such evidence must be deemed true and considered in the light most favorable to the State, discrepancies and contradictions therein are disregarded and the State is entitled to every inference of fact which may be reasonably deduced therefrom.

2. Rape § 5— second degree rape—sufficiency of evidence

Evidence was sufficient for the jury in a second degree rape prosecution where it tended to show that defendant conversed with his victim in a brightly lit laundromat; defendant left the laundromat but returned five minutes later; he told the victim that he had a knife; defendant then grabbed the victim, choked her, dragged her outside and had sexual intercourse with her.

3. Criminal Law § 66.3— in-court identification of defendant—proper pretrial lineup —evidence competent

Evidence in a rape prosecution was sufficient to support the trial court's conclusion that the in-court identification of defendant by the victim was competent where it tended to show that the victim observed defendant for several minutes in a brightly lit laundromat before being dragged outside where the crime was

committed, and the victim identified defendant as her assailant from a pretrial lineup which was properly conducted.

4. **Criminal Law § 66.20— voir dire—oral ruling—written findings subsequently entered in record—no error**

There was no error where the trial court orally stated its ruling that the objection of the defendant to the proposed in-court identification by the rape victim was overruled, the court stated that it would enter written findings of fact and its order in accord with the ruling orally announced, and such findings were entered during the course of the trial.

APPEAL by defendant from *Lupton, J.,* at the 15 November 1976 Session of STANLY.

Upon an indictment, proper in form, the defendant was found guilty of second degree rape and sentenced to imprisonment for life.

The evidence for the State was to the following effect:

At 7:30 p.m. on 28 January 1976, the prosecuting witness was alone in the laundromat in Albemarle doing her laundry, she being a resident of that city. A Negro male, positively identified in court by her as her assailant, entered the laundromat and, after a brief conversation with her, went out. In about five minutes, he returned and said, "I have got a knife and you are going to help me." She saw no knife. He then grabbed her by the arm, choked her and dragged her out of the back door and down some steps where he threw her to the ground, had sexual intercourse with her and then fled. She bit him on the hand before she was thrown to the ground. She had never seen her assailant before. She ran to the home of her father-in-law, half a block from the laundromat, where she "blacked out." She sustained bruises in the assault. She was carried to the Stanly County Hospital and there, on the same evening, was interviewed by an investigating police officer who did not observe any bruises upon her but found her "very emotional." Her statement to this officer was in accord with her testimony as above related.

She described her assailant to the officer as a Negro man dressed in a green Army jacket, printed polyester pants, a turtle neck sweater and a toboggan cap that was "mostly red with little specks of other colors." Subsequently, she conferred with an agent of the State Bureau of Investigation who, based upon her description of her assailant, prepared an Identi-kit composite picture of her assailant. Subsequently (on 13 June 1976), she viewed a lineup composed of seven men at the Stanly County Jail and picked the defendant therefrom as her assailant, to which testimony there was no objection.

At the time of the offense, the defendant was living in Mount Gilead with his mother-in-law and working in Charlotte. Albemarle is on the direct route from Mount Gilead to Charlotte. With the permission of the defendant's mother-in-law, investigating officers obtained from her home a toboggan cap which was introduced in evidence as the State's Exhibit No. 8. It was the same size, shape and color as the one worn by the perpetrator of the offense. It was owned by the defendant's brother-in-law, who lived in the same house. The brother-in-law, who was away in college at the time of the offense, also owned an Army field jacket but no such jacket was found. The brother-in-law did not recall that the defendant had ever worn either the jacket or the toboggan cap, but he frequently wore other clothing belonging to the brother-in-law, who had not seen either the toboggan cap or the Army jacket since the fall of 1975 (some months prior to the alleged offense). Three other males lived at the same residence and from time to time wore clothing, including the Army jacket, belonging to the brother-in-law. The defendant wore a toboggan cap most of the time but, according to the brother-in-law, it was not the one so introduced in evidence by the State. The defendant's mother-in-law had observed him wear a green toboggan cap but had never seen him wear one of any other color.

The defendant did not testify in his own behalf but offered the testimony of his employer and two fellow employees. Their testimony was to the effect that the defendant worked nine hours on 28 January 1976, it not being known precisely when he stopped work that day. None of these witnesses had seen the defendant wear a green Army jacket. They had seen him wearing a green toboggan cap but not a toboggan cap of any other color. One of the fellow employees rode to work with the defendant during the month of January 1976.

Upon objection to testimony by the prosecuting witness as to the identity of her assailant, a voir dire was conducted in the absence of the jury. Upon it, the prosecuting witness testified that the defendant was the Negro man who entered the laundromat and, at that time, she had a clear, well-lighted view of his face. Following a conversation with her, lasting two or three minutes, the man left the laundromat but soon returned. On the second occasion, he was in her presence from five to ten minutes. He wore a green Army jacket, a turtle neck sweater, printed polyester pants and a toboggan cap. A considerable time after the offense (actually on 13 June 1976), she viewed a lineup, composed of seven men, and identified

the defendant therein as the man who had so entered the laundromat. The defendant's court-appointed counsel was present at this lineup. When the prosecuting witness arrived at the Stanly County Jail to view the lineup, the Assistant Chief of Police escorted her into a small office and had a brief conversation with her, during which she believes the defendant's counsel was present.

The Assistant Chief of Police, called as a witness by the defendant upon such voir dire, testified that the prosecuting witness viewed only one lineup and, immediately prior thereto, he had a conversation with her in a small office but he does not recall whether the defendant's counsel was present. At the lineup, she identified the defendant as the man who assaulted her. No one suggested to her whom she should identify. Another officer, also called as a witness for the defendant on the voir dire, testified that he was present at the lineup and he and the defendant's counsel stood together while the Assistant Chief of Police and the prosecuting witness talked to each other inside a small office and that he did not hear the conversation between them.

At the conclusion of the voir dire, the trial judge overruled the objection to the in-court identification. He then stated, "I will enter a [sic] written findings of fact on this and conclusions of law." The record shows that the trial was held on November 15, 16, 17 and 18, 1976. In a document dated 16 November 1976, the trial judge made written findings of fact and entered an order overruling the objection to the in-court identification. Nothing in the record indicates that this document was not entered by the judge on the date so stated therein.

The findings so made by the court (summarized) were: At the time of the alleged offense, the prosecuting witness was in the laundromat which was well-lighted with fluorescent over-head lights; she had no trouble with her vision; while she was in the laundromat, the defendant entered it; she had a clear view of his face while he was in the laundromat the first time, and when he returned five or ten minutes later, she had ample opportunity to observe him in the laundromat, he coming to within two feet of her on this occasion, she having a "very close-up look at him"; when she saw the defendant in the lineup of seven people on 13 June 1976, the defendant's counsel was present; before she observed the lineup, she was told by the Assistant Chief of Police that there would be seven people in it, that each would be given a number and that if she saw in the lineup the person who had assaulted her she should tell the officers the number of that person; that no one said anything or made any sug-

gestion to her as to whom she should identify and no one described any clothing that any person in the lineup would be wearing; she was positive of her identification of the defendant in the lineup and is positive of her in-court identification; the lineup, attended by the defendant's attorney, was in all respects fairly conducted in accordance with fundamental standards of decency, fairness and justice and the total circumstances surrounding it do not reveal procedures unnecessarily suggestive or conducive to irreparable mistaken identification. Upon these findings, the court overruled the objection to the in-court identification.

In his statement of the case on appeal, the defendant makes eight assignments of error, as follows (summarized):

(1) The court erred in overruling the objection to the in-court identification of the defendant; (2) the court erred in overruling the motion to dismiss at the close of the State's evidence; (3) the court erred in overruling the defendant's motion for nonsuit at the close of all of the State's evidence; (4) the court erred in overruling the motion of the defendant to set aside the verdict as being against the greater weight of the evidence; (5) the court erred in overruling the defendant's motion for judgment notwithstanding the verdict; (6) the court erred in overruling the defendant's motion for a new trial for errors committed during the trial and in the court's charge [which charge is not set forth in the record and to which charge the record shows no exception]; (7) the court erred in entering the judgment; and (8) "The Court erred in making Findings of Fact and entering FINDINGS OF FACT AND ORDER as appears of record, it being defendant's contention that although the Trial Judge announced his intention to enter a written FINDINGS OF FACT AND CONCLUSIONS OF LAW, said Trial Judge did not do so in open Court or in the presence of the defendant or defendant's counsel, nor was the defendant or defendant's counsel informed of the entry of said FINDINGS OF FACT AND ORDER or furnished a copy thereof until counsel received a copy thereof from the court reporter on December 28, 1976, the same being attached at the end of the transcript of evidence."

*Rufus L. Edmisten, Attorney General, by David S. Crump, Assistant Attorney General, for the State.*

*Fred Stokes for defendant.*

LAKE, Justice.

The defendant's brief brings forward only his Assignment of Error No. 8. Consequently, Assignments 1 through 7 are deemed abandoned. Rule 28(a) of the Rules of Appellate Procedure, 287 N.C. 741. However, due to the serious nature of the offense and the sentence of the defendant to life imprisonment, we have, nevertheless, reviewed the entire record and considered all of the assignments of error. We find no merit whatever in any of them.

[1, 2] It is elementary that, upon a motion for judgment of nonsuit in a criminal action, all of the evidence favorable to the State, whether competent or incompetent, must be considered, such evidence must be deemed true and considered in the light most favorable to the State, discrepancies and contradictions therein are disregarded and the State is entitled to every inference of fact which may be reasonably deduced therefrom. *State v. Poole*, 285 N.C. 108, 203 S.E. 2d 786 (1974); *State v. Davis*, 284 N.C. 701, 719, 202 S.E. 2d 770 (1974), *cert. den.*, 419 U.S. 857 (1974); *State v. Holton*, 284 N.C. 391, 200 S.E. 2d 612 (1973); *State v. Rankin*, 284 N.C. 219, 200 S.E. 2d 182 (1973); *State v. Everette*, 284 N.C. 81, 199 S.E. 2d 462 (1973); Strong's N.C. Index 3d, Criminal Law, § 104. In the present case, the evidence introduced by the State, so considered, is ample to show the commission of the offense of rape in the second degree and that the defendant was the perpetrator of the crime. Thus the motions to dismiss and for nonsuit were properly denied. *State v. Poole*, supra; *State v. Goines*, 273 N.C. 509, 160 S.E. 2d 469 (1968).

[3] Upon objection by the defendant to the admission of testimony of the prosecuting witness identifying the defendant as the perpetrator of the offense, the trial court properly excused the jury from the courtroom and, in its absence, conducted a voir dire to determine the admissibility of such proposed evidence. The evidence taken upon the voir dire fully supports the findings of fact made by the trial court and disclosed no impropriety whatever in the pretrial lineup at which the prosecuting witness picked the defendant as her assailant. The court's findings of fact, so supported by the evidence on the voir dire, are conclusive. Strong's N.C. Index 3d, Criminal Law, § 66.20. These findings fully support the ruling that the in-court identification of the defendant by the prosecuting witness was competent. There was no objection to the testimony by this witness before the jury that she had identified the defendant as her assailant at the pretrial lineup. Had such objection been interposed, it would have been without merit in view of the evidence

with reference to such lineup taken at the said voir dire and the findings of the court.

The defendant's motion to set aside the verdict on the ground that it was contrary to the weight of the evidence was addressed to the sound discretion of the trial judge whose ruling is not reviewable on appeal in absence of manifest abuse of discretion. *State v. Britt*, 285 N.C. 256, 204 S.E. 2d 817 (19784); *State v. Mason*, 279 N.C. 435, 183 S.E. 2d 661 (1971); *State v. Massey*, 273 N.C. 721, 161 S.E. 2d 103 (1968); *State v. Bridgers*, 267 N.C. 121, 147 S.E. 2d 555 (1966); Strong's N.C. Index 3d, Criminal Law, § 132. Obviously, there was no such abuse of discretion in the present case.

There was no error in denying the defendant's motion for judgment notwithstanding the verdict. The Court of Appeals, in *State v. Brown*, 9 N.C. App. 534, 176 S.E. 2d 907 (1970), has said a motion for judgment notwithstanding the verdict is not proper in a criminal action. Even if it be, its allowance is governed by the same considerations as apply to a motion for a directed verdict and a motion for judgment of nonsuit. *Huff v. Thornton*, 287 N.C. 1, 213 S.E. 2d 198 (1975); *Dickinson v. Pake*, 284 N.C. 576, 201 S.E. 2d 897 (1974). As above noted, the evidence for the State is ample to survive such a motion.

The judgment of the court is supported by the verdict and the sentence imposed is within the limits prescribed by the statute. G.S. 14-21.

[4]   Assignment of Error No. 8 is also without merit. At the conclusion of the voir dire, the court clearly stated its ruling that the objection of the defendant to the proposed in-court identification by the prosecuting witness was overruled. At that time, the court stated that it would enter written findings of fact and its order in accord with the ruling orally announced. The record indicates that such findings were entered during the course of the trial. In this there was no error. *State v. Bass*, 280 N.C. 435, 186 S.E. 2d 384 (1972). Strong's N.C. Index 3d, Criminal Law, § 66.20.

No error.