STATE OF NORTH CAROLINA v. SOLOMON BROWN

No. 588A83

(Filed 3 April 1984)

### 1. Criminal Law § 104— consideration of evidence on motion to nonsuit

Upon a motion to dismiss in a criminal action, all the evidence admitted, whether competent or incompetent, must be considered by the trial judge in the light most favorable to the State, giving the State the benefit of every reasonable inference that might be drawn therefrom, and any contradictions or discrepancies in the evidence are for resolution by the jury.

### 2. Criminal Law § 106— sufficiency of evidence to support criminal conviction— standard to be applied

In determining whether there is sufficient evidence to support a criminal conviction, the standard to be applied is whether there is substantial evidence of each element of the offense charged, and substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is unnecessary also to apply the federal standard enunciated in *Jackson v. Virginia,* 443 U.S. 307 (1979), which states that there must be sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt.

### 3. Narcotics § 1.3— manufacture of controlled substance—intent to distribute

The offense of manufacturing a controlled substance in violation of G.S. 90-87(15) does not require an intent to distribute unless the activity constituting manufacture is preparation or compounding. Therefore, where defendant was charged with manufacturing a controlled substance by packaging and repackaging cocaine, the State was not required to prove as an element of the offense of manufacturing that defendant intended to distribute the controlled substance.

### 4. Narcotics § 4.3— manufacture of cocaine—constructive possession—sufficiency of evidence

There was substantial evidence that defendant was in constructive possession of cocaine and other drug packaging paraphernalia so as to support his conviction of manufacturing a controlled substance by packaging and repackaging cocaine where the evidence tended to show that officers searched an apartment then occupied by defendant and two other persons; defendant was found standing 6-8 inches from a table upon which an officer observed two plastic packages containing a white powdery substance determined to be cocaine, several sandwich-type baggies, plastic bags containing flakes of a green vegetable substance, wire ties used to secure plastic containers of rice, a chemical used to absorb moisture, sheets of aluminum foil, a single-edge razor blade, and a plastic straw which is commonly used to ingest cocaine through the nose; the apartment was leased by defendant's brother and was a "drink house" used for parties rather than for living quarters; defendant had on his person a key to the apartment; defendant had over $1,700.00 in cash in his

pockets; and defendant had been under surveillance by the police for some time and, on every occasion that police observed him, he was at the apartment rather than at his claimed residence.

**5. Criminal Law § 173— opening door to evidence of conviction for which defendant on parole**

When, in a prosecution for the manufacture of cocaine, defendant elicited testimony on direct examination of his parole officer that defendant had been on parole for two years and was still on parole, he "opened the door" to the State's cross-examination of the parole officer concerning the conviction for which defendant was on parole, since evidence that defendant had been supervised for two years without revocation of parole created a favorable inference of a man who for at least two years had "walked the straight and narrow," and the State was free to probe into this evidence in an attempt to rebut the favorable inference which arose therefrom. Therefore, the trial court properly denied defendant's motion for mistrial made when the parole officer responded that defendant was on parole for possession and sale of heroin.

**6. Criminal Law § 173— opening the door to evidence**

The basis for the rule commonly referred to as "opening the door" is that when a defendant in a criminal case offers evidence which raises an inference favorable to his case, the State has the right to explore, explain or rebut that evidence.

Justice EXUM dissenting in part.

Justice FRYE joins in this dissenting opinion.

APPEAL by defendant pursuant to G.S. 7A-30(2) from a decision of the Court of Appeals, opinion by *Braswell, J.,* with *Johnson, J.,* concurring and *Becton, J.,* dissenting, 64 N.C. App. 637, 308 S.E. 2d 346 (1983), finding no error in the judgment entered by *Wood, Judge,* at the 10 March 1982 Criminal Session of FORSYTH Superior Court.

Defendant was charged in a bill of indictment with manufacturing a controlled substance by packaging and repackaging cocaine. Defendant entered a plea of not guilty and the State offered evidence which may be summarized as follows:

Officer Jerry D. Pittman of the Winston-Salem Police Department testified that he and Officers Hutchinson and Craig went to Apartment C at 1634 Chestnut Street, Winston-Salem, North Carolina armed with a search warrant to search that apartment. Upon entering, Officer Pittman called out, "Police—search warrant," and ran through the living room to the bedroom. He there observed defendant standing six to eight inches from a table upon which the officer observed an open brown paper envelope with

two plastic packages of white powdery substance, later determined to be cocaine, several sandwich-type baggies, plastic bags which contained flakes of a green vegetable substance, wire ties used to secure the plastic containers of rice, and a chemical used to absorb moisture in order to keep the powdery substance in high quality. There were also four sheets of aluminum foil, a single-edge razor blade, and a two-inch plastic straw which is commonly used to ingest cocaine through the nose. The testimony of Officers Hutchinson and Craig substantially corroborated Officer Pittman's testimony.

The State's evidence further tended to show that upon searching defendant, the officers seized a key to Apartment C and over $1,700 in cash from defendant's pocket. The State also offered evidence tending to show that this apartment was a "drink house" used for parties and that it was not used for living quarters.

Defendant offered evidence tending to show that the apartment was leased by defendant's brother, Lucious Brown, who also paid the utilities and other apartment expenses.

Nathaniel Small, who was one of the two men observed and arrested in the living room of Apartment C, testified for defendant. He stated that when the officers entered the apartment, defendant was not in the bedroom where the cocaine and other paraphernalia was located but was by the bar with him. Defendant also offered as a witness Mr. Jay Waller, defendant's parole officer, to establish that the apartment in question had not been defendant's residence for the past two years.

At the conclusion of all the evidence, defendant moved to set aside the verdict, renewed his motion to dismiss and his motion for mistrial, and also asked for a new trial. All motions were denied. Defendant appealed from a judgment imposing a prison sentence of ten years and a $10,000 fine.

The Court of Appeals found no error, Judge Becton dissenting. Defendant appealed as a matter of right pursuant to G.S. 7A-30(2).

*Rufus L. Edmisten, Attorney General, by David S. Crump, Special Deputy Attorney General, for the State.*

*D. Blake Yokley for defendant-appellant.*

BRANCH, Chief Justice.

Defendant assigns as error the trial judge's denial of his motion to dismiss.

[1] It is well settled that upon a motion to dismiss in a criminal action, all the evidence admitted, whether competent or incompetent, must be considered by the trial judge in the light most favorable to the State, giving the State the benefit of every reasonable inference that might be drawn therefrom. Any contradictions or discrepancies in the evidence are for resolution by the jury. *State v. Witherspoon*, 293 N.C. 321, 237 S.E. 2d 822 (1977). The trial judge must decide whether there is substantial evidence of each element of the offense charged. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *State v. Smith*, 300 N.C. 71, 78, 265 S.E. 2d 164, 169 (1980).

[2] We note in passing that the majority in the Court of Appeals stated that it was necessary to apply both the standard set forth in *State v. Smith, supra*, and the federal standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, *reh. denied*, 444 U.S. 890 (1979), which states that there must be sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt. We do not believe that it is necessary to apply both standards. *Jackson* related to a federal habeas corpus proceeding and set forth a standard which appears to be totally consistent with the well established North Carolina standard. We therefore hold that the application of our traditional standard in determining whether there is enough evidence to support a criminal conviction is sufficient.

Here defendant was charged in a bill of indictment with the manufacture of a controlled substance, cocaine, in violation of G.S. 90-87(15). That statute provides, in part, as follows:

"Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance by any means, whether directly or indirectly, artificially or naturally, or by extraction from substances of a natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis; and "manufacture" further includes any packaging or

> repackaging of the substance or labeling or relabeling of its container except that this term does not include the preparation or compounding of a controlled substance by an individual for his own use . . . .

The indictment in instant case specifically charged that the manufacturing consisted of packaging and repackaging cocaine.

In *State v. Childers*, 41 N.C. App. 729, 255 S.E. 2d 654, *disc. rev. denied*, 298 N.C. 302, 259 S.E. 2d 916 (1979), the North Carolina Court of Appeals considered the question of whether the State must prove beyond a reasonable doubt that a defendant was manufacturing a controlled substance *with the intent to distribute* in order to obtain a conviction under G.S. 90-95(a)(1). The defendant in *Childers* argued that because the statute excepts "preparation or compounding of a controlled substance by an individual for his own use," any manufacture of a controlled substance for personal use would not be "manufacturing" within the contemplation of the statute.

The Court of Appeals rejected this contention, reasoning that:

> The plain meaning of the exception is to avoid making an individual liable for the felony of manufacturing [a] controlled substance in the situation where, being already in possession of a controlled substance, he makes it ready for use (*i.e.*, rolling marijuana into cigarettes for smoking) or combines it with other ingredients for use (*i.e.*, making the so-called "Alice B. Toklas" brownies containing marijuana).

*Id.* at 732, 255 S.E. 2d at 656. The court noted that the activities not excepted by this proviso contemplate a higher degree of activity involving the controlled substance

> and thus are more appropriately made felonies without regard to the intent of the person charged with the offense as to whether the controlled substance so "manufactured" was for personal use or for distribution. The burden will, of course, be upon the State to prove from the evidence beyond a reasonable doubt that, in cases where the defendant is charged with manufacture of a controlled substance and the activity constituting manufacture is preparation or com-

pounding, that the defendant intended to distribute the con-
trolled substance. . . . In those cases where production,
propagation, conversion or processing of a controlled
substance are involved, the intent of the defendant, either to
distribute or consume personally, will be irrelevant and does
not form an element of the offense.

*Id.* at 732, 255 S.E. 2d at 656-57.

[3] We agree with the analysis of G.S. 90-87(15) articulated by
the Court of Appeals in *Childers* and concur in its conclusion that
the offense of manufacturing a controlled substance does not re-
quire an intent to distribute unless the activity constituting
manufacture is preparation or compounding. We recognize, but
have no explanation for, the omission of the activities of "packag-
ing," "repackaging," "labeling," and "relabeling" from the court's
list of those types of manufacture for which intent to distribute is
not a necessary element. However, the plain language of the
statute makes it clear that these activities are not included within
the limited exception of those manufacturing activities (prepara-
tion, compounding) for which an intent to distribute is required.
We therefore conclude that the State was not required to prove
as an element of the offense of manufacturing that defendant in-
tended to distribute the controlled substance.

[4] Nevertheless, there remains the question of whether there
was a packaging and repackaging of cocaine and whether defend-
ant performed these acts. Certainly the evidence adduced from
the police officers concerning the presence of cocaine and other
paraphernalia used in the packaging of drugs on the table by
which defendant was standing is sufficient to support a reason-
able inference that someone was in the process of packaging and
repackaging the controlled substance of cocaine. Whether defend-
ant was that person presents a more difficult question. This is so
because the evidence does not reveal that defendant was in the
actual physical possession of the drugs or the related parapher-
nalia. Therefore, the State must rely upon the doctrine of con-
structive possession. Constructive possession of contraband
material exists when there is no actual personal dominion over
the material, but there is an intent and capability to maintain con-
trol and dominion over it. *State v. Spencer,* 281 N.C. 121, 187 S.E.
2d 779 (1972).

Although it is not necessary to show that an accused has exclusive possession of the premises where contraband is found, where possession of the premises is nonexclusive, constructive possession of the contraband materials may not be inferred without other incriminating circumstances. *See, e.g., State v. Spencer,* 281 N.C. 121, 187 S.E. 2d 779 (1972).

We find *State v. Harvey,* 281 N.C. 1, 187 S.E. 2d 706 (1972) instructive. There, the defendant was observed by police officers in his home standing within three or four feet of two lots of marijuana. No one else was in the room. We held that this evidence was sufficient to support a reasonable inference that defendant was in possession of marijuana. In so holding, this Court stated:

> An accused's possession of narcotics may be actual or constructive. He has possession of the contraband material within the meaning of the law when he has both the power and intent to control its disposition or use. Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession. Also, the State may overcome a motion to dismiss or motion for judgment as of nonsuit by presenting evidence which places the accused "within such close juxtaposition to the narcotic drugs as to justify the jury in concluding that the same was in his possession." *State v. Allen,* 279 N.C. 406, 183 S.E. 2d 680; *State v. Fuqua,* 234 N.C. 168, 66 S.E. 2d 667; *Hunt v. State,* 158 Tex. Crim. 618, 258 S.W. 2d 320; *People v. Galloway,* 28 Ill. 2d 355, 192 N.E. 2d 370.

*Id.* at 12-13, 187 S.E. 2d at 714.

Although this case differs from *Harvey* in that defendant was not in exclusive control of the searched premises, there are circumstances other than defendant's proximity to the contraband materials which tend to buttress the inference that defendant was the person engaged in the manufacture of cocaine.

Defendant had on his person a key to Apartment C located at 1634 Chestnut Street. He had over $1,700 in cash in his pockets. Defendant had been under surveillance by the police for some time and on every occasion that police observed him, he was at

1634 Chestnut Street in Winston-Salem rather than his claimed residence.

We are of the opinion that under the facts of this case, there was substantial evidence that defendant violated the provisions of G.S. 90-87(15) by packaging and repackaging the controlled substance cocaine. The trial judge therefore correctly denied defendant's motion to dismiss.

[5] By his second assignment of error, defendant contends the trial court erred in denying his motion to strike and motion for mistrial following his parole officer's testimony that defendant was on parole for previous drug violations.

At trial, defendant called as a witness his parole officer, Jay Waller, for the purpose of establishing that defendant did not reside at 1634 Chestnut Street. On direct examination, Waller stated that defendant lived at 3901 Logan Lane and stated that "[a]t the present time, I'm seeing him once every three months. That's the current supervision level he's under. And he's been on parole now approximately two years. And I would, I don't know the exact number, but I have seen him several times at that address."

Thereafter, the State cross-examined Waller as follows:

Q. Is he still under parole with you?

A. Yes, sir.

Q. What for?

[DEFENSE COUNSEL]: Objection.

COURT: Overruled.

\* \* \* \*

COURT: I'm not going to let him go into any other case except the one he's on parole for.

\* \* \* \*

Q. Mr. Waller, what's he on parole for?

A. He is on parole for sale of the controlled substance heroin and two counts of possession of the controlled substance heroin.

Counsel for defendant first asked that the answer be stricken and then moved for mistrial. Both motions were denied.

The Court of Appeals held that under the circumstances of this case, defense counsel "opened the door" to the facts surrounding defendant's parole and therefore it was not error to admit Waller's testimony that defendant was on parole for a drug conviction. Judge Braswell wrote that "[o]nce the defense witness had begun discussing the defendant's parole, the State could properly ask for what the defendant was on parole." 64 N.C. App. at 645-46, 308 S.E. 2d at 351.

Alternatively, the State argues that defendant's prior drug conviction of the possession and sale of heroin was admissible to show defendant's intent to commit the crime charged, to wit, the manufacture of cocaine in violation of G.S. 90-95(a)(1).

In view of our holding that intent was not an element of the crime of manufacturing cocaine by packaging and repackaging the drug, it follows that the evidence of defendant's conviction of possession and sale of heroin is not relevant or admissible to show intent in the charged violation in instant case.

We are thus brought to consideration of the Court of Appeals' holding that defense counsel "opened the door" to facts surrounding defendant's parole and therefore it was not error to admit the witness Waller's testimony that defendant was on parole for a drug conviction.

[6]   The basis for the rule commonly referred to as "opening the door" is that when a defendant in a criminal case offers evidence which raises an inference favorable to his case, the State has the right to explore, explain or rebut that evidence. *State v. Albert*, 303 N.C. 173, 277 S.E. 2d 439 (1981).

In *Albert*, the defendant testified on direct examination that he had told police officers he was willing to take a polygraph examination. On recross-examination, the defendant was asked if he did not in fact take and fail a polygraph examination. He replied

that he did not know. Defense counsel's motion for a mistrial was denied and this Court, finding no error in the trial, stated:

> Here, defendant on direct examination had testified that he told the officers he would be willing to take a lie detector test. This testimony, unexplained, could well lead the jury to believe that the State had refused to give defendant such a test, or that defendant had taken the test with favorable results which the State had suppressed. Under such circumstances, the law wisely permits evidence not otherwise admissible to be offered to explain or rebut evidence elicited by the defendant himself. Where one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially. *State v. Patterson*, 284 N.C. 190, 200 S.E. 2d 16 (1973); *State v. Black*, 230 N.C. 448, 53 S.E. 2d 443 (1949).

*Id.* at 177, 277 S.E. 2d at 441. *Accord, State v. Small*, 301 N.C. 407, 272 S.E. 2d 128 (1980).

A similar question was considered in the case of *State v. Patterson*, 284 N.C. 190, 200 S.E. 2d 16 (1973). There, defense counsel elicited from the prosecuting witness, who was the defendant's stepdaughter, a statement that she disliked the defendant. Obviously this was done to show bias on the part of the prosecuting witness, and the State was permitted on redirect to question the victim as to why she did not like the defendant. Her answer was that she did not like him because he had raped her. Defendant objected to this evidence and the trial court overruled his objection. This Court found no error in the trial judge's ruling.

In the case before us for decision, defense counsel had established through the testimony of Nathaniel Small and Lucious Brown that defendant's residence was not Apartment C located at 1634 Chestnut Street in Winston-Salem. It is unclear to us why astute counsel would offer a *parole* officer to confirm the unchallenged evidence as to defendant's residence. The very fact that the witness was a parole officer raised an inference that defendant had previously been convicted of a crime. However, we conclude that defense counsel must have considered the effects of this testimony and determined that the evidence that defendant

had been supervised for two years without revocation of parole was favorable to his case. Obviously, the introduction of this evidence was favorable to defendant in that it created an image of a man who for at least two years had "walked the straight and narrow." Under these circumstances, the State was free to probe into this evidence and attempt to rebut the favorable inference which arose therefrom. We note that the trial judge restricted the State's inquiry to the crimes for which defendant was on parole.

We hold that under the circumstances of this case, the trial court did not err by admitting into evidence the fact that defendant was on parole for a drug conviction.

For the reasons stated, the decision of the Court of Appeals is

Affirmed.

Justice EXUM dissenting in part.

I dissent from that portion of the majority's decision which holds that it was not error to permit the state to put before the jury on cross-examination of the witness Waller that defendant was "on parole for sale of the controlled substance heroin and two counts of possession of the controlled substance heroin." The majority correctly notes that ordinarily this evidence would have been inadmissible but holds that defendant "opened the door" to its admission by eliciting other testimony from Waller that defendant was in fact on parole. I do not agree that this "opened the door" to the challenged testimony.

I do agree with the majority's statement of the principle to be applied, i.e., that when a criminal defendant offers evidence which if left unexplained or unrebutted would create a favorable inference for his case, the state may offer such evidence as it has in explanation or rebuttal, even if such evidence might otherwise be inadmissible.

I disagree with the majority's application of this principle to the facts before us. That defendant was on parole gave rise to no inference favorable to defendant. The majority's assertion that the jury might draw an inference that inasmuch as defendant's

parole at the time of trial had not been revoked he had "walked the straight and narrow" is strained, to say the least. Defendant offered no evidence that he had been a particularly "good" parolee. Even if one assumes arguendo that Waller's testimony was designed to or did have this effect on the jury, a proposition I find difficult to accept, it is clear that the nature of the crime for which defendant was initially convicted, imprisoned, and later paroled, in no way explains or rebuts whatever the evidence tends to show about his good conduct while on parole. For this reason, admissibility of the evidence cannot be justified under the principle that defendant had opened the door.

Believing too that the evidence unfairly prejudiced the case against defendant and that there is "a reasonable possibility . . . that a different result would have been reached" at trial had the evidence not been admitted, N.C. Gen. Stat. § 15A-1443(a), I vote for a new trial because of its admission.

Justice FRYE joins in this dissenting opinion.