CALABRIA, Judge.
Where the evidence, taken in the light most favorable to the State, demonstrated that defendant willfully and unlawfully refused to comply with security screening, the trial court did not err in denying his motions to dismiss the charge of resisting a public officer and for judgment notwithstanding the verdict. Where defendant offered no factual basis for his requested jury instructions, the trial court did not err in declining to instruct the jury as defendant requested. Even assuming that hearsay testimony was improperly admitted, its admission was not so grossly improper as to preclude a fair verdict, and the trial court did not abuse its discretion in denying defendant's motion for a mistrial.
I. Factual and Procedural Background
On 15 November 2013, David Campbell Sutton ("defendant"), an attorney, was in the Pitt County Courthouse, approaching a courtroom. Captain James L. Marsal ("Captain Marsal"), and Deputies Jeff G. Bridges ("Deputy Bridges") and Priyakant H. Sinhal ("Deputy Sinhal"), officers with the Pitt County Sheriff's Department, were operating a security checkpoint outside of the courtroom. Defendant approached the checkpoint, passed through and set off the metal detector, and despite the requests of the officers, did not stop. As a result, later that day, a magistrate issued an order for defendant's arrest, on the charge of resisting a public officer. The matter was subject to presentment[1] before the Pitt County Grand Jury, which returned a true bill of indictment. Defendant filed a motion to dismiss the indictment and appear before the Grand Jury, alleging a conflict of interest with the Pitt County District Attorney.[2] A subsequent presentment was held before the Grand Jury, which found a true bill, and a superseding indictment issued.
On 10 March 2014, defendant, appearing pro se , filed a second motion to dismiss the indictment. In this motion, defendant alleged that other lawyers and paralegals were able to freely enter the courthouse, and that only he and his employees were subject to search. He further contended that the indictment, for a misdemeanor offense, was "extremely rare." Notably, however, his motion cited little law, instead merely relying on "the Due Process Clause and Equal Protection Clauses of the U.S. Constitution and North Carolina General Statutes on Grand Jury procedures and jurisdiction of this Court[ ]" in support of his motion to dismiss.[3]
The matter proceeded to trial, and Captain Marsal, Deputy Bridges, and Deputy Sinhal testified as to the events of 15 November 2013. At the close of the State's evidence, defendant offered a long, rambling oral motion, which on appeal he contends included a motion to dismiss. In this motion, defendant alleged that the administrative order subjecting him to search was unconstitutional; that he could not be convicted for resisting arrest if the arrest lacked lawful authority; that the officers failed to assert, at the time of the alleged offense, their basis for requiring defendant to stop; that the stop was therefore baseless; and that therefore he could not be charged with resisting arrest. The trial court considered this motion "in the light most favorable to the State," and, treating the motion as one for directed verdict, ruled that "the motion of the Defendant for a directed verdict at this time is denied." Defendant then declined to offer evidence, and rested, renewing his motion. Again, the trial court denied defendant's motion. After the State's closing argument, defendant moved for a mistrial, alleging prejudicial hearsay. This motion was denied.
The jury returned a verdict finding defendant guilty of willfully resisting, delaying, or obstructing a public officer. After the jury returned its verdict, defendant moved for judgment notwithstanding the verdict ("JNOV"), once more asserting that the officers had no lawful basis to command him to stop, rendering the entire detention unlawful. The trial court denied this motion.
The trial court found defendant to have a prior misdemeanor level of II, and sentenced him to 45 days in county jail. The trial court then suspended that sentence, and placed defendant on 24 months of supervised probation. The trial court further assessed defendant for fees, costs, and a community service fee, and ordered defendant to appear for an anger management evaluation.
Defendant appeals.
II. Motion to Dismiss
In his first argument, defendant contends that the trial court erred by denying defendant's motion to dismiss and motion for JNOV. We disagree.
A. Standard of Review
"This Court reviews the trial court's denial of a motion to dismiss de novo ." State v. Smith , 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). " 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " State v. Fritsch , 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting State v. Barnes , 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) ), cert. denied , 531 U.S. 890, 148 L.Ed. 2d 150 (2000).
In a criminal case the motion for a directed verdict of not guilty, like the motion for judgment of nonsuit, challenges the sufficiency of the evidence to take the case to the jury, and in passing upon such a motion the same rule applies, i.e., the evidence must be viewed in the light most favorable to the State and the State must be given the benefit of all inferences in its favor which may be reasonably drawn.
State v. Long , 20 N.C. App. 91, 94, 200 S.E.2d 825, 827 (1973) (citations omitted).
The Court of Appeals, in State v. Brown , 9 N.C. App. 534, 176 S.E.2d 907 (1970), has said a motion for judgment notwithstanding the verdict is not proper in a criminal action. Even if it be, its allowance is governed by the same considerations as apply to a motion for a directed verdict and a motion for judgment of nonsuit.
State v. Witherspoon , 293 N.C. 321, 327, 237 S.E.2d 822, 826 (1977).
B. Analysis
As a preliminary matter, we note that this Court has held that "the motion for judgment notwithstanding the verdicts is not a proper procedure in a criminal action." State v. Brown , 9 N.C. App. 534, 538, 176 S.E.2d 907, 910 (1970) ; see also Witherspoon , 293 N.C. at 327, 237 S.E.2d at 826. Even assuming arguendo that the motion was appropriate, it is held to the same standard as a motion for directed verdict or dismissal. Witherspoon , 293 N.C. at 327, 237 S.E.2d at 826. Given the ambiguity of defendant's motion at trial, and in the interest of lenity, we shall treat it as a motion to dismiss, which was procedurally proper and properly preserved.
Defendant's contention on appeal ultimately depends upon his assertion that the officers who detained him were not executing their lawful duties, because their command for him to stop was not premised upon lawful authority. However, upon review of the record, this is factually inaccurate.
Defendant was charged under a statute which provides that, "[i]f any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a Class 2 misdemeanor." N.C. Gen. Stat. § 14-223 (2015). The evidence at trial demonstrates that Captain Marsal, Deputy Bridges, and Deputy Sinhal, were executing their duties in guarding the security checkpoint in the courthouse. Defendant does not argue on appeal, nor was such argument raised at trial, that this was not a lawful duty. Defendant's contentions are premised solely upon the position that the officers' demand that he stop was not made in the course of a lawful duty.
According to the facts of this case, it seems clear that the officers were engaged in their lawful duty, securing the checkpoint. By necessity, guarding a checkpoint includes stopping and searching individuals passing through the checkpoint. Defendant contends that others were not required to pass through security screening, and that he had been selectively prosecuted by this action.
Notwithstanding defendant's arguments to the contrary, the evidence demonstrates that the officers were engaged in this duty when they demanded that defendant proceed through the checkpoint, and that defendant attempted to bypass the checkpoint despite the officers' commands. Defendant "willfully and unlawfully resist[ed]," by refusing to comply with security procedures, "public officer[s,]" namely Captain Marsal, Deputy Bridges, and Deputy Sinhal, "in discharging or attempting to discharge a duty of [their] office," namely securing the checkpoint. We hold that the trial court did not err in denying defendant's motion.
III. Jury Instructions
In his second argument, defendant contends that the trial court erred by declining to give requested jury instructions. We disagree.
A. Standard of Review
"[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed de novo by this Court." State v. Osorio , 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). "[A] trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial." State v. Cameron , 284 N.C. 165, 171, 200 S.E.2d 186, 191 (1973), cert. denied , 418 U.S. 905, 41 L.Ed. 2d 1153 (1974). "Where jury instructions are given without supporting evidence, a new trial is required." State v. Porter , 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995).
B. Analysis
During the charge conference, defendant requested that the jury receive North Carolina Pattern Jury Instruction 230.31, concerning misdemeanor resisting arrest. Defendant later retracted this request, and requested Pattern Jury Instruction 230.32, concerning the use of excessive force by an arresting officer. The trial court declined, however, noting defendant's exception, and instead proceeded to instruct the jury on Pattern Jury Instruction 230.30, concerning obstruction of an officer in situations aside from arrest. Defendant contends that this was error.
The offense at issue was not that defendant resisted arrest, but rather that defendant attempted to bypass a security checkpoint. Law enforcement officers were protecting the checkpoint at the courthouse; defendant's attempt to bypass the checkpoint constituted "willfully and unlawfully [resisting] a public officer in [attempting to discharge] a duty of his office." N.C.P.I.-Crim 230.30. It is clear from the record before us that this instruction was appropriate, given the facts of this case.
By contrast, to support defendant's proposed instruction, concerning the excessive use of force by an officer, the evidence had to show that "defendant's [resistance] ... was in response to excessive force by an officer, because any such resistance, delay or obstruction in that event would not be unlawful." N.C.P.I.-Crim 230.32. No such evidence was elicited at trial. Defendant did not offer testimony that any officer used force, and no officer testified to using force. As such, the requested instruction was not supported by the evidence, and the trial court did not err in declining to give the instruction to the jury.
Defendant contends that he also "asked for special instructions on lawfulness and the legal right to resist an illegal restraint[.]" During the colloquy on defendant's requested instruction, Pattern Instruction 230.32, defendant requested that the instruction be modified. Defendant requested that the modified instruction "specifically instruct [the jury] that the officer had to have a legal basis for the command. The command had to be lawful." Defendant offered no written instruction. The State, when given the opportunity to respond, argued that the defendant was "asking the jury to make legal findings which are exclusively" within the purview of the trial court. The trial court then declined to give defendant's modified instruction.
"[T]he reasonableness of the officer's grounds to believe the defendant had committed a misdemeanor in the officer's presence, when properly raised, is a factual question to be decided by the jury." State v. Smith , 225 N.C. App. 471, 476, 736 S.E.2d 847, 851 (2013) (quoting State v. Jefferies, 17 N.C. App. 195, 199, 193 S.E.2d 388, 392 (1972) ). However, "[i]t is not error for the trial court to not instruct the jury on the question of the lawfulness of the arrest if the evidence does not support such an instruction." Id .
Defendant requested the additional instruction on the lawfulness of his arrest. However, defendant's burden on appeal is to establish that there was evidence at trial creating a factual issue for the jury. Defendant does not do this. Instead, defendant offers a blanket statement that the evidence "clearly required" an instruction on lawfulness, and that "lawfulness of the duty is a factual question to be decided by the jury." Defendant offers no specific citations of evidence, nor factual nor legal arguments, to show what specific factual issue was created. We hold that defendant's broad assertions do not meet his burden on appeal, and that defendant has failed to show that the trial court's refusal to give his requested special instruction was error.
Defendant further contends that the trial court's refusal was not merely error, but plain error. He offers no argument as to why it constitutes plain error, however, nor does he explain why the plain error doctrine should apply where the issue was properly preserved by objection. As such, we deem this portion of defendant's argument abandoned. N.C.R. App. P. 28(b)(6).
IV. Mistrial
In his third argument, defendant contends that the trial court erred by admitting irrelevant hearsay over objection and declining to grant a mistrial. We disagree.
A. Standard of Review
"The decision whether to grant a motion for mistrial rests within the sound discretion of the trial judge and will not ordinarily be disturbed on appeal absent a showing of abuse of that discretion." State v. Boyd , 321 N.C. 574, 579, 364 S.E.2d 118, 120 (1988). "A mistrial is appropriate only when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict." State v. Harris , 323 N.C. 112, 125, 371 S.E.2d 689, 697 (1988). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." State v. Hennis , 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).
B. Analysis
Defendant contends that prejudicial hearsay testimony was admitted at trial, over objection, requiring a mistrial. Specifically, defendant points to testimony that multiple unnamed individuals had expressed "concerns" about his mental status, and the State's closing arguments concerning defendant's possession of firearms.
With respect to the testimony concerning firearms, defendant cites the direct examination of Captain Marsal. During the State's examination, the following exchange took place:
Q. Now, you stated earlier that when the metal detector went off, you did not know what-for what reason it went off; is that correct?
A. That's correct.
Q. Now, did you have information, at that point, about Mr. Sutton's ability to access weapons?
A. Yes.
Q. And can you tell the jury about that, please?
A. Well, I was aware that he had access to some weapons that a client of his had.
MR. SUTTON: Objection, your Honor. May we approach? No, I withdraw my objection.
BY MS. ROBB:
Q. Do you know approximately how many weapons he or his wife had access to at that time?
A. I do not know an exact number I can recall.
Q. Do you recall a range?
A. At least fifty.
Q. And did that raise your concern about the Defendant at this time, going through the metal detector?
A. It was a concern.
Defendant raised an objection to this testimony, but then withdrew it. As such, any objection to the testimony concerning defendant's access to "[a]t least fifty" firearms was not properly preserved. As this objection was not properly preserved, and defendant does not argue plain error with respect to this issue, we decline to review it for the first time on appeal. See N.C.R. App. P. 10(a)(1), 10(a)(4).
Defendant raises further arguments with respect to the prosecutor's reference to inadmissible hearsay in this issue, concerning the State's closing argument. Specifically, defendant contends that the State, in referring to this evidence, caused "substantial and irreparable prejudice to [defendant]'s case." However, the State's closing argument is not present in the record; only defendant's motion for a mistrial, citing that argument, is available in the transcript presented by defendant to this Court. There is no evidence in the record that defendant made or preserved any objection to the State's closing arguments, nor indeed that those arguments contained the language which defendant challenged at trial, and now challenges on appeal. Nor does defendant take issue with the fact that these portions of the transcript are omitted.
We are not prepared to presume, based solely upon defendant's assertions, that the State engaged in any form of grossly improper closing argument, or improper reliance upon evidence which we have already held was properly admitted, that would support a motion for a mistrial. Thus, with respect to the testimony and closing arguments in reference to defendant's access to firearms, we hold that the trial court did not abuse its discretion in denying defendant's motion for a mistrial.
With respect to testimony concerning his mental status, defendant cites the redirect examination of Captain Marsal. This examination took place after defendant conducted cross-examination of Captain Marsal, during which defendant asked about Captain Marsal's testimony in a disciplinary hearing of the State Bar against defendant. On redirect, the State asked Captain Marsal to elaborate on that testimony:
Q. Now, at the time of this offense were there judges, attorneys, and other people who were being deposed by Mr. Sutton the Bar?
A. Yes.
Q. And you expressed, after Mr. Sutton asked you over, and over, and over about if you had any concerns about him, you expressed that you did; is that correct?
A. That's correct.
Q. Can you please tell this jury how many other court officers, including judges and attorneys, expressed concerns about Mr. Sutton?
MR. SUTTON: Objection, hearsay.
THE COURT: Wait a minute.
THE WITNESS: Directly to me?
THE COURT: One minute. One minute, sir. Expressed it to who?
MS. ROBB: How many.
THE COURT: How many expressed them to who?
MS. ROBB: To Captain Marsal.
THE COURT: Overruled.
BY MS. ROBB:
Q. How many?
A. Half a dozen.
Q. Did they include judges?
A. They did.
MR. SUTTON: Objection, your Honor.
THE COURT: Overruled.
BY MS. ROBB:
Q. Did they include attorneys?
A. They did.
MR. SUTTON: Objection.
THE COURT: Overruled.
BY MS. ROBB:
Q. Did they include other employees who worked in this courthouse?
A. They did.
MR. SUTTON: Objection.
THE COURT: Overruled.
MS. ROBB: Those are my questions, your Honor, thank you.
Defendant contends that this line of inquiry was "highly prejudicial [,]" "would clearly outweigh [any] probative value under Rule 403[,]" and "constitutes improper character impeachment[.]"
Even assuming arguendo that this testimony was improper under Rule 403 of the North Carolina Rules of Evidence, however, defendant's argument on appeal is not that the trial court erred in admitting it. Defendant's argument is that the admission of this evidence constitutes "such serious impropriet[y] as would make it impossible to attain a fair and impartial verdict." Harris , 323 N.C. at 125, 371 S.E.2d at 697.
Defendant's argument on this point is somewhat sparse. He contends that the testimony "is not relevant to the criminal charge of resisting an officer [,]" rendering it inadmissible. He offers brief arguments with respect to the inadmissibility of the testimony, and promptly concludes that "it obviously had the desired effect of depriving [defendant] of a fair trial."
As previously discussed, it is uncontested that defendant walked through a security checkpoint after being asked by officers to stop. His alleged mental state notwithstanding, Captain Marsal's testimony of defendant's conduct was quite sufficient to support the jury's verdict. Even if Captain Marsal had not mentioned the "concerns" of others in the courthouse, the evidence was entirely sufficient to support the judgment. We therefore decline to conclude, even assuming arguendo that the testimony was improperly admitted, that the admission of Captain Marsal's "concerns" constituted "such serious impropriet [y] as would make it impossible to attain a fair and impartial verdict." Harris , 323 N.C. at 125, 371 S.E.2d at 697. We hold that the trial court did not abuse its discretion in denying defendant's motion for a mistrial with respect to this testimony.
V. Conclusion
The trial court did not err in denying defendant's motions to dismiss the charge of resisting a public officer and for judgment notwithstanding the verdict. The trial court did not err in declining to instruct the jury as defendant requested. The trial court did not abuse its discretion in denying defendant's motion for a mistrial.
NO ERROR.
Report per Rule 30(e).
Judges STROUD and INMAN concur.

A "presentment" is a criminal procedure in which the Grand Jury instructs the State in the framing of a bill of indictment. State v. Thomas, 236 N.C. 454, 458, 73 S.E.2d 283, 286 (1952).

Defendant contends that this motion was denied. There is no evidence in the record as to the disposition of this motion, but as defendant does not challenge its purported denial on appeal, we need not address the absence of a ruling. N.C.R. App. P. 28(b)(6).

As with the previous motion, there is no evidence in the record concerning the disposition of this motion to dismiss. However, as with the previous motion, defendant does not challenge this motion on appeal, and we need not address the absence of a ruling. N.C.R. App. P. 28(b)(6).