STATE OF NORTH CAROLINA v. GERALD WAYNE BROWN

No. 864SC929

(Filed 1 September 1987)

1. **Automobiles and Other Vehicles § 112.1— manslaughter—evidence of intoxication— sufficient**

There was sufficient evidence of defendant's intoxication for an involuntary manslaughter charge arising from a pedestrian being hit by defendant's van to go to the jury where defendant admitted drinking eight beers from 8:30 to 11:30 p.m.; there was evidence that defendant was not impaired at that time; the victim was struck between 1:05 a.m. and 1:52 a.m.; and defendant admitted having four beers, being "intoxicated," and having "consumed too much beer" at 2:30 a.m. to 3:00 a.m. Although evidence of consumption alone is not sufficient, it was reasonable for the jury to infer intoxication from his earlier drinking of eight beers, despite evidence to the contrary.

2. **Criminal Law § 106.4— death of pedestrian—admission by driver of intoxication—substantial independent evidence of trustworthiness**

In a prosecution for involuntary manslaughter following the death of a pedestrian who was struck by defendant's van, there was substantial evidence

tending to establish the trustworthiness of defendant's admission that he was intoxicated and had consumed too much beer.

**3. Criminal Law § 86.2— cross-examination concerning prior guilty plea—no attorney at prior trial—conviction admissible**

In a prosecution for involuntary manslaughter following the death of a pedestrian struck by defendant's van, allegedly while defendant was intoxicated, the trial court did not err by allowing the State to ask defendant whether he had been convicted in 1977 of driving under the influence based upon a guilty plea without an attorney where the evidence supported the court's finding that a defendant failed to show that he was indigent at the time of the 1977 conviction. N.C.G.S. § 15-980(a) and (c).

APPEAL by defendant from *Strickland, Judge.* Judgment entered 21 February 1986 in Superior Court, ONSLOW County. Heard in the Court of Appeals 10 February 1987.

*Attorney General Lacy H. Thornburg by Associate Attorney General Linda Anne Morris for the State.*

*Merritt & Stroud by Timothy E. Merritt for defendant appellant.*

COZORT, Judge.

The defendant was charged in indictments proper in form with manslaughter (N.C.G.S. § 14-18) and hit and run resulting in personal injury or death (N.C.G.S. § 20-166(a) ). He was convicted of involuntary manslaughter and hit and run with personal injury or death not apparent to the defendant. The State's case on involuntary manslaughter was based on its contention that a pedestrian was killed when struck by defendant's van which was being operated by the defendant while the defendant was impaired by alcohol. The only evidence of defendant's impairment or intoxication was his admission that he was "intoxicated" and "had consumed too much beer" about one to three hours after the pedestrian was killed. The defendant denied being intoxicated when the incident occurred and denied seeing or striking the pedestrian. We hold that the defendant's admission was sufficient to supply the necessary evidence of impairment, and we find no error in the conviction. The facts follow.

The State's evidence tended to show that in the early morning hours of Sunday, 20 October 1985, Larry Keith Drum, a

Sergeant in the United States Marine Corps, and Ron Kistner discovered a person lying in the road at the intersection of Lake Street and Barbara Avenue in Jacksonville. They saw that the man was bleeding and having difficulty breathing. The Highway Patrol and an ambulance were called and the rescue squad came and took the person away.

Trooper Richard Allen Hood of the North Carolina Highway Patrol was dispatched to the scene, arriving at 1:52 a.m. The injured person had been taken away by the rescue squad prior to his arrival. Sergeant Drum and Kistner told him where the person had been discovered in the road. Trooper Hood found several pieces of what appeared to be amber turn light lens. Trooper Hood put the amber lens pieces in a bag. One piece of the lens had a Chrysler insignia on it. Trooper Hood went to a Chrysler dealership nearby and began comparing the lens piece with the Chrysler insignia on it to the lenses on vehicles at the dealership. He determined that the piece discovered in the road compared to that of a Dodge van at the dealership. Trooper Hood drove back to the scene of the accident, arriving at about 3:00 a.m. He then started driving up and down nearby streets, looking for a Dodge van.

At about 3:30 a.m. Trooper Hood found a Dodge van parked on the side of the road. The right turn signal lens had been broken. The pieces he had retrieved from the scene of the accident matched the van he found. Trooper Hood later learned that the house in front of which the van was parked was the residence of Robin Nuss. Trooper Hood called a wrecker and had the vehicle impounded. He learned that the van was registered to Gerald Wayne Brown, the defendant. He went to the address listed for the defendant, woke up the occupants there, and learned that Brown no longer lived there.

At 4:00 a.m., Trooper Hood went off duty and went home. Later that day he looked up Gerald Wayne Brown in the telephone directory and called the number listed for him. A male answered the phone and identified himself as Gerald Wayne Brown. Brown said he owned a 1979 black and red van which he had left at the house of a friend, Robin Nuss. Trooper Hood told Brown he was investigating an accident. Upon a request by Trooper Hood, Brown stated that he and his wife would meet

Trooper Hood at the Highway Patrol Station at 4:00 p.m. When he arrived at the station, the defendant Brown was advised of his rights and made this statement, in writing:

> Drove back from Cherry Point tournament arriving at about 8:30 P.M. Went home and then went to Alibi Bar from 9:30 to 11:30, consuming about eight cans of beer. Left and went to Shogun on Highway 24, left went to Jiffy-Mart, arriving 1:00 P.M. Went to Robin Nuss's house after picking up eggs and bacon at Jiffy Mart, arriving at Robin's house at approximately 1:30 P.M. Left Robin's house around 3:00 P.M. Wife drove home. Left van parked at Robin's house. Got a call about 1:30 P.M. 20 October, stating van was involved in accident. Came to . . . Highway Patrol Office to see Officer Hood 4:00 P.M. 20 October.

In response to questions by Trooper Hood, defendant Brown stated that he drove from the Jiffy Mart to Nuss's house between 2:30 a.m. and 3:00 a.m., leaving his van there and riding home with his wife because he "didn't want to drive because intoxicated [sic]." Defendant Brown admitted driving through the intersection where the victim was found; however, he denied striking anyone. He told Trooper Hood there was no damage to his van. Later that day, Trooper Hood examined the defendant's van again. The right side mirror was pulled back from the body of the van, and there was a small dent in the body under the right side of the windshield. Trooper Hood removed the grill from the front of the van and fit the pieces of turn light lens in the grill.

The person found lying in the street was later identified as Leslie Frank McPherson. McPherson died at 2:25 p.m. on Monday, 21 October 1985. An autopsy was performed by Dr. Charles L. Garrett, who found McPherson had received a severe injury to his head resulting in a fracture of his skull and bruising and tearing of his brain. The cause of death was the head injury. The injuries received by McPherson were consistent with his having been struck by a motor vehicle.

Patricia Gibbs, a friend of McPherson's, testified that he called her from a pay phone at the Jiffy Mart on Barbara Avenue at about 11:45 p.m. on the evening of 19 October 1985. They talked until about 1:05 a.m., 20 October 1985, when McPherson told her he was going to walk home and hung up the phone.

The defendant testified in his own behalf and presented other witnesses. The defendant is a Gunnery Sergeant in the United States Marine Corps, having enlisted in 1968. On Saturday, 19 October 1985, he went to a softball tournament at Cherry Point. He ate three hot dogs there at noon and returned to Jacksonville when the tournament was over, arriving in Jacksonville around 8:00 p.m. to 8:30 p.m. His wife was not ready to go out with him at the time. He left alone; she agreed to meet him later at the Alibi Bar, a local establishment. The defendant left his home between 8:30 p.m. and 9:00 p.m., driving his 1979 Dodge van. The defendant stayed at the Alibi until about 11:30 p.m. During that time, he drank approximately eight (8) 12-ounce cans of beer. He ate nothing at the Alibi, and in fact the record shows that he had nothing to eat after he returned to Jacksonville until he went to the Nuss home for breakfast. He left the Alibi at about 11:30 p.m. to go to the Shogun, a local restaurant. His wife, who had joined him at the Alibi, also went to the Shogun, following defendant in her car. The defendant testified he was not intoxicated when he left the Alibi. The defendant was at the Shogun for about an hour. He had nothing to eat or drink at the Shogun.

Around 12:30 a.m., defendant and his wife left the Shogun with plans to go to the house of friends, Robin and Carol Nuss, for breakfast. Defendant and his wife went next door to the Jiffy Mart and bought bacon, eggs, and a 12-pack of beer. The defendant drove to Nuss's house, which was a short distance away. The drive took about five (5) minutes. The defendant drove through the intersection of Lake Street and Barbara Avenue. The defendant testified that during this drive nothing unusual happened and that he saw no one walking or lying in the street. He testified that he did not strike anyone in the intersection. The defendant also testified that his ability to operate a motor vehicle was not impaired by his consumption of alcoholic beverages. While at the Nuss home, the defendant ate breakfast and drank "probably four" 12-ounce cans of beer. He and his wife left to go home about 2:30 a.m. to 3:00 a.m. The defendant left his van at the Nuss's to ride home with his wife. He testified he let his wife drive home because "at the time I thought I had consumed too much beer and I was very tired."

The defendant's wife, Carolyn Sue Brown, testified that she drank two beers while they were at the Alibi and two more at the

Shogun. When they were leaving the Shogun, she was of the opinion that her husband walked and spoke normally and that he was not impaired by alcohol. She followed him from the Shogun to the Nuss's house, and nothing out of the ordinary happened.

John Lane Garcia, the husband of the owner of the Alibi, saw the defendant at the Alibi and at the Nuss's house. In his opinion the defendant was not impaired by alcoholic beverages; to the contrary, he "was in good shape." Also, the defendant acted normal when he got to the Nuss's; he did not appear to be upset.

Harry Garfield Reckline, a retired United States Marine Corps Sergeant, saw defendant at the Shogun at about 11:30 p.m.-12:00 midnight. Reckline, who had drunk about six (6) beers during the course of the evening, stated that, in his opinion, the defendant did not appear to be impaired.

The defendant also offered witnesses who attested to his good character.

The jury found the defendant guilty of involuntary manslaughter and guilty of hit-and-run with personal injury or death not apparent to the defendant. The offenses were consolidated for judgment, and the trial court imposed an active sentence of 3 years, the presumptive term for involuntary manslaughter. The defendant appeals.

The primary issue to be decided on appeal is whether the trial court erred in denying the defendant's motion for dismissal at the close of the State's evidence and the motion for directed verdict at the close of all the evidence. These motions raise the issue of whether the evidence is sufficient to take the case to the jury.

> It is well settled that upon a motion to dismiss in a criminal action, all the evidence admitted, whether competent or incompetent, must be considered by the trial judge in the light most favorable to the State, giving the State the benefit of every reasonable inference that might be drawn therefrom. Any contradictions or discrepancies in the evidence are for resolution by the jury. *State v. Witherspoon*, 293 N.C. 321, 237 S.E. 2d 822 (1977). The trial judge must decide whether there is substantial evidence of each element of the offense charged. Substantial evidence is such relevant evi-

dence as a reasonable mind might accept as adequate to support a conclusion. *State v. Smith*, 300 N.C. 71, 78, 265 S.E. 2d 164, 169 (1980).

*State v. Brown*, 310 N.C. 563, 566, 313 S.E. 2d 585, 587 (1984).

In his brief the defendant does not challenge the sufficiency of the evidence on the misdemeanor hit-and-run conviction. Thus, our discussion is limited to the involuntary manslaughter conviction.

"Involuntary manslaughter is the unintentional killing of a human being without malice, proximately caused by (1) an unlawful act not amounting to a felony nor naturally dangerous to human life, or (2) a culpably negligent act or omission." [Citation omitted.] . . . .

*   *   *   *

[W]hen a death is caused by one who was driving under the influence of alcohol, only two elements must exist for the successful prosecution of manslaughter: a willful violation of N.C.G.S. 20-138 and the causal link between that violation and the death.

*State v. McGill*, 314 N.C. 633, 637, 336 S.E. 2d 90, 92-93 (1985).

[1]  There was sufficient circumstantial evidence that McPherson was killed when hit by the van driven by defendant. The key question here is whether there was sufficient evidence of the defendant's intoxication to prove a willful violation of N.C.G.S. § 20-138.1. *Id.* There was no testimony from expert witnesses or from lay witnesses who observed the defendant that he was intoxicated when he was driving his van from the Shogun to the Nuss's house, through the intersection where McPherson was killed. The defendant admitted that he drank eight beers in a period of time between 8:30 p.m. and 11:30 p.m. and that he had nothing else to drink until after he reached the Nuss's house. He denied that he was intoxicated or impaired when he was driving to the Nuss's house, which is the crucial time. McPherson was struck at some time between 1:05 a.m. and 1:52 a.m. The defendant's wife testified that the defendant was not impaired when he left the Shogun at approximately 12:30 a.m. John Lane Garcia testified that he saw the defendant at the Alibi (before McPherson

was killed) and at the Nuss's house (which would have been after McPherson was struck); and in his opinion the defendant "was in good shape." A third witness, Harry Garfield Reckline, testified that he saw defendant at the Alibi at about 12:00 midnight, and the defendant did not appear to be impaired.

The State argues in its brief that the defendant's admission that he drank eight (8) beers from 8:30 p.m. to 11:30 p.m. on 19 October 1985 was sufficient evidence to go to the jury on the question of whether the defendant was impaired by alcohol when he was operating his van between 1:05 a.m. and 1:52 a.m. on 20 October 1985. We reject that argument.

> Under our statutes, the consumption of alcohol, standing alone, does not render a person impaired. *State v. Ellis*, 261 N.C. 606, 135 S.E. 2d 584 (1964). An effect, however slight, on the defendant's faculties, is not enough to render him or her impaired. *State v. Hairr*, 244 N.C. 506, 94 S.E. 2d 472 (1956). Nor does the fact that defendant smells of alcohol by itself control. *State v. Cartwright*, 12 N.C. App. 4, 182 S.E. 2d 203 (1971). On the other hand, the State need not show that the defendant is "drunk," i.e., that his or her faculties are *materially* impaired. *See State v. Painter*, 261 N.C. 332, 134 S.E. 2d 638 (1964). The effect must be appreciable, that is, sufficient to be recognized and estimated, for a proper finding that defendant was impaired. *See State v. Felts*, 5 N.C. App. 499, 168 S.E. 2d 483 (1969) (new trial on other grounds).

*State v. Harrington*, 78 N.C. App. 39, 45, 336 S.E. 2d 852, 855 (1985). Thus, there must be some evidence of the defendant's intoxication and that he was impaired, or the conviction cannot stand. Evidence of consumption alone, without evidence of intoxication or impairment, is not sufficient.

The only evidence that the defendant was intoxicated or impaired came from the defendant himself. The defendant told Trooper Hood when interviewed on the afternoon of 20 October 1985 that he did not drive from the Nuss's home to his home at about 2:30 a.m. to 3:00 a.m. because he "didn't want to drive because intoxicated [*sic*]." At trial the defendant testified that he had four (4) beers at the Nuss's house, and he didn't drive home because "at the time I thought I had consumed too much beer and I was very tired." The question then is whether the defendant's

admission of being "intoxicated" or having "consumed too much beer" at 2:30 a.m.-3:00 a.m. is sufficient evidence from which the jury could infer that the defendant was impaired between 1:05 a.m. and 1:52 a.m. We hold the evidence was sufficient.

If the defendant admitted that he was intoxicated at 2:30 a.m. or 3:00 a.m. after having four (4) beers, it is reasonable for the jury to infer that the intoxication was a carry-over from his earlier drinking of eight (8) beers between 8:30 p.m. and 11:30 p.m. Or, it would be reasonable for the jury to infer that if defendant admitted that the consumption of four (4) beers at 2:30 a.m. was enough to make him intoxicated at that time, then the consumption of eight (8) beers earlier in the evening was enough to make him intoxicated earlier, despite his testimony and the testimony of other witnesses that he was not impaired. Those contradictions or discrepancies are to be resolved by the jury in their fact-finding process. *State v. Brown*, 310 N.C. at 566, 313 S.E. 2d at 587.

[2] We further hold, following *State v. Parker*, 315 N.C. 222, 337 S.E. 2d 487 (1985), that the defendant's admission of impairment is supported by substantial independent evidence tending to establish the trustworthiness of the admission so as to sustain the conviction. We first note, that under *State v. Trexler*, 316 N.C. 528, 342 S.E. 2d 878 (1986), the corpus delicti rule applies with equal force to a *confession*, an acknowledgment of guilt to a crime charged, and to an *admission*, a statement of pertinent facts which, in light of other evidence, is incriminating. *Id.* at 531, 342 S.E. 2d at 879-80. The defendant's statements that he was "intoxicated" and had "consumed too much beer" were admissions, *i.e.*, statements which incriminated him given other facts in evidence. In *Parker*, the Supreme Court held:

> We adopt a rule in non-capital cases that when the State relies upon the defendant's confession to obtain a conviction, it is no longer necessary that there be independent proof tending to establish the *corpus delicti* of the crime charged if the accused's confession is supported by substantial independent evidence tending to establish its trustworthiness, including facts that tend to show the defendant had the opportunity to commit the crime.

*State v. Parker*, 315 N.C. at 236, 337 S.E. 2d at 495.

We find the defendant's admission of impairment to be trust-worthy. There was evidence both from defendant and other wit-nesses that defendant was an experienced drinker. The defendant acknowledged that he drank often, and that he generally did not drink more than eight beers in an evening. We believe his admis-sion of intoxication is trustworthy and was sufficient evidence of the element of impairment to take the case to the jury.

[3] The defendant has raised one other issue for our considera-tion. On cross-examination, the State was permitted, over the ob-jection of the defendant, to ask the defendant whether he had been convicted in 1977 of driving under the influence. The defend-ant contends the trial court erred in allowing this evidence because the defendant was not represented by counsel in the 1977 conviction, and he was indigent. We disagree.

Under N.C.G.S. § 15A-980(a), "[a] defendant has the right to suppress the use of a prior conviction that was obtained in viola-tion of his right to counsel if its use by the State is to impeach the defendant . . . ." Under N.C.G.S. § 15A-980(c), the defendant has the burden of proof by the preponderance of the evidence "that at the time of the conviction he was indigent, had no counsel, and had not waived his right to counsel." We have held that the defendant must meet his burden on *all three facts. State v. Haislip*, 79 N.C. App. 656, 658, 339 S.E. 2d 832, 834 (1986).

In the case below, the trial court heard evidence after the defendant moved to suppress the 1977 conviction. The trial court then entered an order which appears in the transcript as follows:

1. That this is an evidentiary hearing and that the de-fendant and his counsel are present and that the State's at-torney is present. That the defendant, Gerald Wayne Brown being the sole witness at this hearing, was sworn and testi-fied that he pled guilty to the offense of driving under the in-fluence in Onslow County in July, 1977, at which time he was not represented by an attorney.

Next. That the witness Brown testified that he did not waive an attorney.

Next. That the defendant Brown testified that he had called an attorney and was quoted a fee; that he does not re-

member but he was advised as to the penalty that he might receive.

Next. That the defendant Brown then made his own decision that he could not afford to hire an attorney.

Next. That on the occasion of the offense to which the defendant entered a plea of guilty, he was driving a vehicle not owned by him. That at said time, the defendant's pay grade in the United States Marine Corps was E-6 over eight years. Just make that E-6 with eight years of service, and that he was not married at the time.

That the defendant did not at that time own an automobile or a motor vehicle but was paying on other debts for items that he had purchased while overseas.

Based upon the foregoing findings of fact—well, find another finding.

That the defendant did not make a request of the Court at any time that he be appointed counsel on the grounds of being indigent.

Based upon the foregoing findings of fact, the Court concludes as a matter of law that the burden is upon the defendant to prove by a preponderance of the evidence that his July, 1966 conviction for DUI was obtained in violation of his right to counsel.

2. That the defendant has failed to prove by a preponderance of the evidence that he was indigent within the meaning of the General Statutes of North Carolina.

Upon the foregoing findings of fact and conclusions of law, it is ordered that the defendant's motion to suppress is DENIED.

Our scope of review on an order from a motion to suppress is limited to "determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law. (Citation omitted.)" *State v. Cooke*, 306 N.C. 132, 134, 291 S.E. 2d 618, 619 (1982). Our review of the record convinces us that

there is evidentiary support for the findings made and that the conclusion reached is consistent with those findings.

In the trial below, we find

No error.

Judges MARTIN and PARKER concur.