STATE OF NORTH CAROLINA v. LAWRENCE EDWARD ROGERS, JR.

No. COA01-989

(Filed 1 October 2002)

**1. Rape— attempted first-degree—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of attempted first-degree rape even though the State relied on the serious injuries suffered by the victim mother's daughter to elevate the offense when the daughter was not present during the attempted rape and the indictment did not allege which element the State relied on to elevate the crime to a first-degree offense, because: (1) when the State is proceeding under the theory that the serious personal injury was inflicted on a person other than the victim of the rape or attempted rape, there is no requirement under N.C.G.S. § 14-27.2(a)(2)(b) that the other person actually be present during the rape or attempted rape; (2) viewing the evidence in the light most favorable to the State reveals that a jury could have reasonably inferred that defendant attacked the daughter for the purpose of concealing the attempted rape of the mother or aiding in his escape from apprehension and that the attempted rape of the mother and the attack on the daughter were part of one continuous transaction; (3) the evidence supports the serious personal injury element of attempted first-degree rape based on the injuries suffered by either of the two victims; and (4) N.C.G.S. § 15-144.1 does not require that an indictment for rape contain an allegation of which element the State was relying on to elevate the crime to a first-degree offense.

**2. Assault— deadly weapon—singular hand—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury even though the State relied on defendant's use of his singular hand as a deadly weapon, because: (1) North Carolina courts have held that hands and fists may be considered deadly weapons given the manner in which they were used and the relative size and condition of the parties involved; (2) the State's evidence showed that the manner in which defendant used his hand to assault the victim had devastating physical

effect, and defendant is a six feet two inches tall male weighing 165 pounds while the victim is a female approximately five feet three inches tall weighing ninety-nine pounds; (3) the distinction advanced by defendant between a singular hand as opposed to both hands or fists is insignificant in light of the evidence; and (4) the evidence supported a reasonable inference that defendant intended to kill the victim while he was hitting and choking her, and the fact defendant may have changed his mind and allowed the victim to escape from his attack does not mean the State was precluded from submitting the issue of intent to kill to the jury.

**3. Kidnapping— unlawful removal to facilitate commission of rape—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of kidnapping based on defendant's unlawful removal of the victim from one place to another for the purpose of facilitating the commission or attempted commission of first-degree rape, because: (1) there was substantial evidence that defendant's removal of the victim through the house was for the purpose of facilitating the attempted rape; and (2) the removal of the victim was not a separate complete act independent and apart from the acts necessary to constitute the attempted rape.

**4. Rape— attempted first-degree—jury instructions—serious personal injury on victim or another**

The trial court did not err in its instructions on attempted first-degree rape by instructing the jury that it could find defendant guilty if it found that he inflicted serious personal injury on the victim or any other person, because the State presented sufficient evidence to show that the attempted rape of the victim and the assault of another victim were part of a continuous transaction.

**5. Criminal Law— jury instructions—voluntary intoxication**

The trial court did not err in an attempted first-degree rape, felony breaking or entering, second-degree kidnapping, and assault with a deadly weapon with intent to kill inflicting serious injury case by denying defendant's requests for jury instructions on voluntary intoxication, because there was insufficient substantial evidence that defendant was utterly incapable of forming the requisite intent to commit the crimes at issue.

## 6. Sentencing— record level—prior misdemeanor convictions obtained without counsel

The trial court did not err in an attempted first-degree rape, felony breaking or entering, second-degree kidnapping, and assault with a deadly weapon with intent to kill inflicting serious injury case by denying defendant's motion to suppress the use of two prior misdemeanor convictions used by the State to elevate defendant's prior record level for sentencing purposes from Level IV to Level V even though defendant contends the two prior convictions were obtained in violation of his right to counsel under N.C.G.S. § 15A-980, because: (1) defendant failed to prove by the preponderance of the evidence that he was indigent at the time of the two prior convictions which he sought to suppress at trial; and (2) the only evidence of defendant's indigency was his mere assertion that he could not afford an attorney at the time of the prior convictions.

Appeal by defendant from judgments entered 30 October 2000 by Judge Narley L. Cashwell in Alamance County Superior Court. Heard in the Court of Appeals 22 May 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Donald W. Laton, for the State.*

*Daniel H. Monroe for defendant-appellant.*

CAMPBELL, Judge.

Defendant was indicted on one count of first degree rape, one count of felony breaking or entering, one count of first degree kidnapping, two counts of misdemeanor assault inflicting serious injury, and one count of assault with a deadly weapon with intent to kill inflicting serious injury. The State did not proceed on the misdemeanor assault inflicting serious injury charge naming Pamela Hadley as the victim.[1] Following a jury trial, defendant was convicted of attempted first degree rape, felony breaking or entering, first degree kidnapping, and assault with a deadly weapon with intent to kill inflicting serious injury. The trial court arrested judgment on first degree kidnapping and sentenced defendant for second degree kidnapping. Defendant was sentenced to four consecutive terms of imprisonment. Defendant appeals.

---

1. Pamela Hadley was also the alleged victim in the assault with a deadly weapon with intent to kill inflicting serious injury charge.

The State's evidence tended to show that on 19 May 2000, at approximately 11:30 a.m., defendant knocked on the front door of Bonnie Prevette's ("Prevette") residence at 1011 South Main Street in Burlington and asked Prevette if he could mow her lawn for twenty dollars. After declining defendant's offer, Prevette stepped back to close the door. Defendant grabbed the screen door and started pushing his way into the house. Prevette responded: "You're not coming in my house. Get out of my house. You cannot come in my house." Defendant reached through the screen door and hit Prevette in the face, causing her to lose her grip on the front door. Defendant continued hitting Prevette in the face, eventually knocking her to the floor. Defendant then positioned himself on top of Prevette, tore off Prevette's shorts, pulled down his own pants, removed his penis, and began "working it back and forth" with one hand while keeping the other hand on Prevette's throat. Defendant then placed his hand and penis between Prevette's legs and began pushing his penis up against her vaginal area, while keeping one hand on her throat. Prevette protested.

While defendant was assaulting Prevette, Prevette's daughter, Pamela Hadley ("Hadley"), entered the house through the back door. Hadley walked through the kitchen and into the next room where she saw her son, Nolan, asleep on the floor. Hadley opened a door which led to the living room, where she thought her mother would be watching television. When Hadley opened the door, she saw a man's legs sticking out from the hallway. She then heard Prevette state, "Just get off me. Please get off." Hadley also noticed Prevette's eyeglasses on the floor. Realizing her mother was in trouble, Hadley ran outside and called 911 from her car phone.

After calling 911, Hadley went back into the house hoping to retrieve her son. She again entered the house through the back door. As she was walking through the house, Hadley was confronted by defendant and her mother. Defendant had stopped attempting to rape Prevette when he was startled by a noise in the house, and had dragged Prevette through the house as he was looking for the source of the noise.

Upon confronting Hadley, defendant grabbed her by the shirt, hit her in the face, and knocked her to the floor. Defendant then hit Hadley multiple times in the face before he got on top of her and began choking her. As he was beating and choking Hadley with one hand, defendant was holding Prevette with the other. Prevette kicked defendant in the stomach, which caused him to stagger and release

his grip on Hadley's throat. Defendant responded by hitting both victims several more times. Hadley then rolled over and noticed her son, whereupon she started screaming loudly. Defendant then stopped attacking the women and allowed Hadley to hold her son. For approximately two to three minutes, defendant did not assault the two women. Officer Amy Isley then knocked on the front door and defendant fled from the house.

At the conclusion of the State's evidence, defendant moved to dismiss all of the charges against him on the grounds of insufficiency of the evidence. The trial court dismissed the first degree rape charge but allowed the State to proceed on attempted first degree rape. The trial court also dismissed the misdemeanor assault inflicting serious injury charge naming Bonnie Prevette as the victim.

Defendant's evidence consisted solely of the testimony of his mother, Dorothea Rogers, who testified that defendant had a history of mental illness for which he had been hospitalized on five or more occasions. At the close of all the evidence, defendant moved to dismiss the remaining charges against him. The trial court denied this motion.

Defendant asserts twelve assignments of error in the record on appeal. However, defendant fails to present argument or authority in support of several of his assignments of error. Those assignments of error are deemed abandoned pursuant to N.C. R. App. P. 28(b)(6). We only address those assignments of error properly set forth and argued in defendant's brief.

## I.

Defendant first contends the trial court erred in denying his motions to dismiss the charges of attempted first degree rape, first degree kidnapping, and assault with a deadly weapon with intent to kill inflicting serious injury.

A motion to dismiss is properly denied if "there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). In ruling on a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference that

may be drawn from the evidence. *State v. Jaynes*, 342 N.C. 249, 274, 464 S.E.2d 448, 463 (1995). The test of the sufficiency of the evidence is the same whether the evidence is direct, circumstantial, or both. *State v. Jones*, 303 N.C. 500, 504, 279 S.E.2d 835, 838 (1981).

### Attempted First Degree Rape

**[1]** N.C. Gen. Stat. § 14-27.2 (2001) defines first degree rape in pertinent part as follows:

> (a) A person is guilty of rape in the first degree if the person engages in vaginal intercourse:
>
>     . . .
>
>     (2) With another person by force and against the will of the other person, and:
>
>     . . .
>
>         b. Inflicts serious personal injury upon the victim *or another person*; or
>
>     . . . .

The trial court in the mandate of its instructions to the jury on the charge of attempted first degree rape stated:

> So I charge you, that if you find from the evidence beyond a reasonable doubt that on or about May the 19th, 2000, the Defendant intended to have vaginal intercourse with Bonnie Prevette by force and against her will, and that the Defendant performed an act or acts which was or were calculated and designed to bring about vaginal intercourse by force and against Bonnie Prevette's will, and would have resulted in such intercourse had the Defendant not been stopped or prevented from completing his apparent course of action, and that the Defendant inflicted serious personal injury upon Bonnie Prevette *or another person*, it would be your duty to return a verdict of guilty of attempted first degree rape. (Emphasis added).

Defendant contends there was insufficient evidence the victim of the attempted rape, Bonnie Prevette, suffered serious personal injury. Defendant further contends the State could not rely on the injuries suffered by Pamela Hadley in elevating the offense to attempted *first* degree rape because Hadley was not present during the attempted rape.

When the State is proceeding under the theory that the serious personal injury was inflicted on a person other than the victim of the rape, or attempted rape, there is no requirement under N.C.G.S. § 14-27.2(a)(2)(b) that the other person actually be present during the rape, or attempted rape. *See State v. Blackstock*, 314 N.C. 232, 333 S.E.2d 245 (1985). In *Blackstock*, the Supreme Court held that the element of infliction of serious personal injury is satisfied

> when there is a series of incidents forming one continuous transaction between the rape or sexual offense and the infliction of the serious personal injury. Such incidents include injury inflicted on the victim to overcome resistance or to obtain submission, injury inflicted upon the victim or another in an attempt to commit the crimes or in furtherance of the crimes of rape or sexual offense, or injury inflicted upon the victim *or another for the purpose of concealing the crimes or to aid in the assailant's escape.*

*Id.* at 242, 333 S.E.2d at 252 (emphasis added).

In the instant case, the State's evidence tended to show Hadley came into the house while defendant was attacking Prevette. Defendant apparently heard Hadley and discontinued his attempt to rape Prevette. Defendant then pulled Prevette through the house, whereupon the two of them encountered Hadley, who had reentered the house after calling the police. Defendant then attacked Hadley, hitting her in the face and choking her. Viewing the evidence in the light most favorable to the State, a jury could have reasonably inferred that defendant attacked Hadley for the purpose of concealing the attempted rape of Prevette or aiding in his escape from apprehension and that the attempted rape of Prevette and the attack on Hadley were part of one continuous transaction. Accordingly, the State could properly rely on the injuries suffered by Hadley in elevating the attempted rape to attempted *first* degree rape.

"In determining whether serious personal injury has been inflicted, the court must consider the particular facts of each case." *State v. Herring*, 322 N.C. 733, 739, 370 S.E.2d 363 (citing *State v. Roberts*, 293 N.C. 1, 235 S.E.2d 203 (1977)). The injury must be serious but it must fall short of causing death. *See Roberts*, 293 N.C. at 13, 235 S.E.2d at 211; *State v. Jones*, 258 N.C. 89, 91, 128 S.E.2d 1, 3 (1962). Our courts have consistently stated that further definition seems neither wise nor desirable. *Roberts*, 293 N.C. at 13, 235 S.E.2d at 211; *Jones*, 258 N.C. at 91, 128 S.E.2d at 3.

Here, the State's evidence tended to show that both Prevette and Hadley were hit in the face multiple times and were choked by defendant. Prevette suffered a broken nose, a concussion, bruises on the upper and lower parts of both arms, and abrasions to other parts of her body. Dr. Strickland testified that Prevette's broken nose was the type of injury that would cause "severe pain." Hadley suffered a cracked cheekbone, a broken nose and a broken jaw. The broken jaw required surgery which resulted in Hadley's jaw being wired shut for three weeks. We conclude that the evidence, taken in the light most favorable to the State, supports the serious personal injury element of attempted *first* degree rape based on the injuries suffered by either of the two victims in the instant case.

Defendant also argues the trial court should have granted his motion to dismiss attempted *first* degree rape because the indictment did not allege which element the State was relying on to elevate the crime to a *first* degree offense. However, N.C. Gen. Stat. § 15-144.1 does not require that an indictment for rape contain such an allegation. *See State v. Lowe,* 295 N.C. 596, 247 S.E.2d 878 (1978).

### Assault With a Deadly Weapon With Intent to Kill Inflicting Serious Injury

[2] Defendant contends there was insufficient evidence of his use of a deadly weapon or his intent to kill Pamela Hadley to support submitting the felony assault charge to the jury. We disagree.

The indictment alleged defendant assaulted Pamela Hadley with his hand, a deadly weapon, with the intent to kill inflicting serious injury. Defendant contends that the evidence presented at trial was insufficient to classify defendant's singular hand, as opposed to his hands or fists, as a deadly weapon. Defendant further maintains that no prior case has supported the proposition that a single hand may be used as a deadly weapon.

A deadly weapon is "any article, instrument or substance which is likely to produce death or great bodily harm." *State v. Sturdivant,* 304 N.C. 293, 301, 283 S.E.2d 719, 725 (1981). "It has long been the law of this state that '[w]here the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion, the question as to whether or not it is deadly . . . *is one of law, and the Court must take responsibility of so declaring.*'" *State v. Torain,* 316 N.C. 111, 119, 340 S.E.2d 465, 470 (1986) (quoting *State v. Smith,*

187 N.C. 469, 470, 121 S.E.737, 737 (1924) (emphasis in original)). However, "where the instrument, according to the manner of its use or the part of the body at which the blow is aimed, may or may not be likely to produce [death or great bodily harm], its allegedly deadly character is one of fact to be determined by the jury." *State v. Joyner*, 295 N.C. 55, 64-65, 243 S.E.2d 367, 373 (1978); *see also State v. Grumbles*, 104 N.C. App. 766, 770-71, 411 S.E.2d 407, 410 (1991). This Court has held that hands and fists may be considered deadly weapons, given the manner in which they were used and the relative size and condition of the parties involved. *See State v. Krider*, 138 N.C. App. 37, 530 S.E.2d 569 (2000); *Grumbles*, 104 N.C. App. at 771, 411 S.E.2d at 410; *State v. Jacobs*, 61 N.C. App. 610, 611, 301 S.E.2d 429, 430 (1983).

. In the instant case, the State's evidence showed that the manner in which defendant used his hand to assault the victim, Pamela Hadley, had devastating physical effect. Defendant hit the victim so hard that she suffered a cracked cheekbone, a broken nose and a broken jaw. The broken jaw required surgery. The evidence also showed that defendant choked the victim so severely that red marks were left on her neck. Further, the evidence shows that defendant is six feet two inches tall and weighs one hundred sixty-five (165) pounds, while the victim is a female approximately five feet three inches tall and weighing ninety-nine (99) pounds.

Based on this evidence, we conclude the trial court properly allowed the jury to decide whether defendant's hand was a deadly weapon. The distinction advanced by defendant on appeal between a singular "hand," as opposed to both "hands" or "fists," is insignificant in light of the evidence in the instant case. The evidence showed that defendant hit and choked Pamela Hadley with one hand while holding the other victim, Bonnie Prevette, with his other hand. Accordingly, we hold that a single hand may be considered a deadly weapon, based on the manner in which it is used and the relative size and condition of the parties involved.

Defendant also contends the evidence was insufficient to show his intent to kill Pamela Hadley. Defendant focuses on the fact that, after initially beating and choking Pamela Hadley, he stopped and allowed her to hold and comfort her baby son, after which he did not resume assaulting her. In fact, the evidence shows defendant did not assault Pamela Hadley in the final two to three minutes he was in the house prior to running from the police. Accordingly, defendant argues

the evidence was insufficient to show intent to kill, but rather showed an ample opportunity to kill on his part which was not acted upon. We disagree with defendant's contention.

"The defendant's intent to kill may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances." *State v. James*, 321 N.C. 676, 688, 365 S.E.2d 579, 586 (1988) (citing *State v. Thacker*, 281 N.C. 447, 189 S.E.2d 145 (1972)). There is ample evidence in the record from which a jury could reasonably infer that defendant intended to kill Pamela Hadley. Defendant hit Hadley in the face with such force that she suffered a cracked cheekbone, a broken nose, and a broken jaw. Defendant also choked Hadley to the point where she was having extreme difficulty breathing and thought that she was going to die. Although defendant is correct that the evidence shows he stopped hitting and choking Ms. Hadley for two to three minutes before he fled from the house, these additional facts make the State's evidence no less sufficient to send to the jury. In sum, the evidence supported a reasonable inference that defendant intended to kill Pamela Hadley while he was hitting and choking her. The fact defendant may have changed his mind and allowed Hadley to escape from his attack does not mean the State was precluded from getting to the jury on the issue of his intent to kill. Defendant's argument to the contrary lacks merit.

## Kidnapping

[3] Defendant contends the trial court erred in denying his motion to dismiss the kidnapping charge because the evidence showed that any removal of the victim occurred after he discontinued his attempt to rape her. We disagree.

N.C. Gen. Stat. § 14-39 (2001) provides in pertinent part:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

(1) Holding such other person for a ransom or as a hostage or using such other person as a shield; or

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

(3)  Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person; or

. . . .

The indictment in the instant case charged that defendant committed kidnapping by unlawfully removing the victim from one place to another for the purpose of facilitating the commission of first degree rape. Accordingly, the jury was only permitted to convict defendant of first degree kidnapping if the evidence showed that he unlawfully removed the victim from one place to another for the purpose of facilitating the commission, or the attempted commission, of first degree rape. *See State v. Tucker*, 317 N.C. 532, 346 S.E.2d 417 (1986).

The State's evidence tended to show that, after defendant forced his way into Prevette's house, he knocked her to the floor and attempted to rape her. According to Prevette, defendant apparently became startled, got up, grabbed her by the arm and pulled her from room to room in the house while his pants were still down. Defendant and Prevette then encountered Hadley, who had entered the house through the back door. Defendant began beating and choking Hadley with one hand while holding Prevette with the other. Defendant struck both victims numerous times before a police officer knocked on the front door causing defendant to flee from the house.

While we agree that one inference to be drawn from this evidence is that defendant permanently discontinued his attempt to rape Prevette, an equally reasonable inference could be drawn that defendant moved Prevette from room to room in the house while maintaining his intent to rape her. Defendant still had his pants down while dragging Prevette through the house and later assaulted both she and her daughter. The jury could have reasonably inferred that defendant intended to resume his attempted rape of Prevette but was not provided the opportunity due to Hadley's entrance into the house, the screaming of her baby son, and the police officer knocking on the door. Viewed in the light most favorable to the State, there was substantial evidence that defendant's removal of Prevette through the house was for the purpose of facilitating the attempted rape.

We likewise disagree with defendant's contention that the removal of Prevette was not a separate, complete act, independent and apart from the acts necessary to constitute the attempted rape. *See State v. Silhan*, 297 N.C. 660, 256 S.E.2d 702 (1979). It is clear that the removal in the instant case was not necessary to accomplish the

attempted rape; in fact, the attempted rape had already been accomplished at the time of the removal. Accordingly, the trial court did not err in denying defendant's motion to dismiss the kidnapping charge.

## II.

**[4]** Defendant next contends the trial court erred in its instructions on attempted first degree rape by instructing the jury that it could find defendant guilty if it found that he inflicted serious personal injury on Bonnie Prevette or any other person. Having already held that the State presented sufficient evidence to show that the attempted rape of Prevette and the assault of Hadley were part of a continuous transaction, we conclude that the trial court's instructions on this charge were proper. *See Blackstock,* 314 N.C. 232, 333 S.E.2d 245 (1985).

**[5]** Defendant next contends the trial court erred in denying his requests for jury instructions on voluntary intoxication. Defendant argues that the evidence of his mental condition on the day of the crimes, coupled with his history of mental health, alcohol and drug addiction problems, warranted a jury instruction on voluntary intoxication. We disagree.

To be entitled to an instruction on voluntary intoxication, a defendant must produce substantial evidence which would support a conclusion by the judge that the defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming the intent required to commit the offense. *State v. Mash,* 323 N.C. 339, 346, 372 S.E.2d 532, 536 (1988); *see also State v. Lancaster,* 137 N.C. App. 37, 45, 527 S.E.2d 61, 67 (2000). "Evidence of mere intoxication, however, is not enough to meet the defendant's burden of production." *Mash,* 323 N.C. at 346, 372 S.E.2d at 536. A person may be excited, intoxicated and emotionally upset, and still have the capability to formulate the necessary intent required to commit a criminal offense. *See State v. McQueen,* 324 N.C. 118, 142, 377 S.E.2d 38, 52 (1989); *Mash,* 323 N.C. at 347, 372 S.E.2d at 537; *State v. Hamby,* 276 N.C. 674, 678, 174 S.E.2d 385, 387 (1970).

In the instant case, Officer Poston testified that defendant had a moderate odor of alcohol about his person after he was apprehended by police. Defendant was given an alco-sensor test which showed a blood alcohol content of .07, a level below the level at which one would be presumed to be driving while impaired under our motor vehicle laws. *See State v. Medley,* 295 N.C. 75, 243 S.E.2d 374 (1978)

(holding evidence that a defendant's blood alcohol content is such that driving would violate the motor vehicle laws, standing alone, does not entitle the defendant to an instruction on voluntary intoxication). Although Donna Balsinger testified defendant had "wild-looking eyes" when he ran through her business attempting to avoid the police, and defendant's mother testified about his history of drug and alcohol abuse, Officer Poston testified that, during questioning, defendant's speech was clear and understandable and not slurred, that defendant was responsive to the officer's questions, and that defendant's eyes were clear. Further, both Officer Poston and Officer Long testified that in their opinion defendant was not impaired.

Viewed in the light most favorable to defendant, there was not substantial evidence that defendant was utterly incapable of forming the requisite intent to commit the crimes at issue. Therefore, defendant was not entitled to an instruction on voluntary intoxication.

## III.

**[6]** Defendant next contends the trial court erred in denying his motion to suppress the use of two prior misdemeanor convictions used by the State to elevate his prior record level for sentencing purposes from Level IV to Level V. Defendant argues that these prior convictions were obtained in violation of his right to counsel.

N.C. Gen. Stat. § 15A-980 governs defendant's motion to suppress prior convictions in violation of his right to counsel. The statute reads, in pertinent part:

(a) A defendant has the right to suppress the use of a prior conviction that was obtained in violation of his right to counsel if its use by the State is to impeach the defendant or if its use will:

(1) Increase the degree of crime of which the defendant would be guilty; or

(2) Result in a sentence of imprisonment that otherwise would not be imposed; or

(3) Result in a lengthened sentence of imprisonment.

. . .

(c) When a defendant has moved to suppress use of a prior conviction under the terms of subsection (a), he has the burden of proving by the preponderance of the evidence that the conviction was obtained in violation of his right to counsel. To prevail, he

must prove that at the time of the conviction [1] he was indigent, [2] had no counsel, and [3] had not waived his right to counsel. If the defendant proves that a prior conviction was obtained in violation of his right to counsel, the judge must suppress use of the conviction at trial or in any other proceeding if its use will contravene the provisions of subsection (a).

N.C. Gen. Stat. § 15A-980 (2001). This Court has held that a defendant must prove all three facts—(1) he was indigent, (2) had no counsel, and (3) had not waived his right to counsel—by the preponderance of the evidence. *State v. Brown*, 87 N.C. App. 13, 22, 359 S.E.2d 265, 270 (1987); *Cf. State v. Haislip*, 79 N.C. App. 656, 658, 339 S.E.2d 832, 834 (1986).

It is uncontroverted that the two prior convictions defendant sought to suppress were used to elevate his prior record level to Level V, which resulted in a lengthened sentence of imprisonment. It is also uncontroverted that defendant had no counsel at the time of the two prior convictions. Thus, the only issues are whether defendant was indigent and whether defendant waived his right to counsel.

In the instant case, the trial court conducted a hearing on defendant's motion to suppress the prior convictions. At the hearing, defendant testified as follows:

**Q** Never had a lawyer on any of those? Okay. Back on July 11th, 1997, could you afford to hire a lawyer back then?

**A** No, I couldn't.

. . .

**Q** We're not through yet. We're still in it, but we've been trying it for six days. Now, back in 19—on October 6, 1998, could you afford to hire a lawyer back then?

**A** No.

Defendant's testimony was the only evidence elicited concerning whether defendant was indigent at the time of the prior convictions.

In *Brown*, this Court was faced with a similar set of facts. There, the trial court heard evidence following the defendant's motion to suppress the use of a prior conviction. The defendant was the sole witness. Following the defendant's testimony, the trial court made the following pertinent findings of fact:

Next. That the defendant Brown testified that he had called an attorney and was quoted a fee; that he does not remember but he was advised as to the penalty that he might receive.

Next. That the defendant Brown then made his own decision that he could not afford to hire an attorney.

That the defendant did not make a request of the Court at any time that he be appointed counsel on the grounds of being indigent.

Based on these findings of fact, the trial court made the following pertinent conclusion of law:

2. That the defendant has failed to prove by a preponderance of the evidence that he was indigent within the meaning of the General Statutes of North Carolina.

The trial court denied the defendant's motion to suppress use of the prior conviction, and this Court upheld that decision on appeal. *Brown*, 87 N.C. App. at 22-24, 359 S.E.2d at 270-71.

This Court's decision in *Brown* stands for the proposition that the mere assertion by a defendant that he could not afford an attorney at the time of a prior conviction does not prove by a preponderance of the evidence that the defendant was indigent, as required under N.C.G.S. § 15A-980. Applying this proposition to the instant case, we conclude defendant failed to prove by the preponderance of the evidence that he was indigent at the time of the two prior convictions which he sought to suppress at trial. The only evidence of defendant's indigency was his mere assertion that he could not afford an attorney at the time of the prior convictions. Having concluded defendant failed to prove by a preponderance of the evidence that he was indigent at the time of the prior convictions, we need not consider whether defendant had waived his right to counsel. Defendant's assignment of error is overruled.

We have considered defendant's remaining assignments of error and, based on the record, briefs, and applicable law, we find them lacking in merit.

Defendant received a fair trial and sentencing free from error.

No error.

Judges WYNN and HUNTER concur.