McGEE, Chief Judge.
I. Background
George Washington Jones ("Defendant") approached the Stewart & Perina convenience store ("the store") in Charlotte, North Carolina on 17 September 2014 in order to talk to his landlord, Roger Lee Stewart ("Mr. Stewart"). When Defendant left the store, he had an altercation with James Willie Kee ("Mr. Kee"). Mr. Kee testified at trial that after he and Defendant exchanged words outside the store, Defendant approached him with a six-foot-long metal pipe and began swinging it at him. Mr. Kee held up a metal folding chair to defend himself, but one of Defendant's blows knocked the chair out of Mr. Kee's hands, and as he reached down to pick up the chair, Defendant struck him on the back of the head with the pipe. The blow caused Mr. Kee to collapse to the ground, where Defendant continued to strike him with the metal pipe. As a result of the blow to the head, Mr. Kee received seventeen stitches.
Defendant testified at trial that, when he left the store, Mr. Kee, who was intoxicated, yelled "you need to get the f- -k out of [Mr. Stewart's] house." Defendant responded by telling Mr. Kee to mind his own business, at which point Mr. Kee picked up a metal folding chair and swung it at Defendant. Defendant used his forearm to block the blow, causing Mr. Kee to lose his grip and drop the chair. Defendant picked up the chair before Mr. Kee could do so and hit Mr. Kee one time on the head. The blow caused Mr. Kee to fall to the ground and Defendant left the scene immediately.
Defendant was indicted for habitual misdemeanor assault and attaining the status of an habitual felon on 6 April 2015. Defendant was subsequently indicted on 20 April 2015 for assault with a deadly weapon inflicting serious injury (AWDWISI).
Defendant's trial on these charges concluded on 6 October 2016. Following the evidentiary portion of the trial, the trial court initially instructed the jury on the habitual misdemeanor assault charge as follows:
If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant intentionally assaulted James Willie Kee by striking him with a metal pipe and that the defendant thereby caused physical injury to James Willie Kee, nothing else appearing, then it would be your duty to return a verdict of guilty of assault inflicting physical injury.
During jury deliberations, the jury sent a note to the court asking if they were required to find that Defendant had used the metal pipe in order to find Defendant had committed an assault. The trial court responded:
The second possible verdict that I told you about is assault inflicting a physical injury. Under our law an assault is the application of force to the person of another without his consent. That's the traditional legal definition of an assault: The application of any force, however slight, to the person of another without his consent. An assault can occur without any weapon being used, okay?
So in order to find-to prove that the defendant is guilty of assault inflicting physical injury, they have to prove two things: One, that the defendant intentionally assaulted Mr. Kee, okay? And, second, that he caused a physical injury. They don't have to prove that there was a weapon of any kind utilized.
The jury returned a verdict of guilty for the charge of habitual misdemeanor assault but acquitted Defendant of the assault with a deadly weapon inflicting serious injury charge. Defendant then entered a plea of having attained habitual felon status. Defendant appeals.
II. Analysis
Defendant contends the trial court erred by instructing the jury that the State did not need to prove the use of a metal pipe to convict him of habitual misdemeanor assault. Specifically, Defendant contends that there was a fatal and, therefore, prejudicial variance between the material elements alleged in the indictment and those included in the relevant jury instruction. We disagree.
A. Standard of Review
Defendant objected to the trial court's modified jury instruction. "Where the defendant preserves his challenge to jury instructions by objecting at trial, we review the trial court's decisions regarding jury instructions ... de novo ." State v. Hope , 223 N.C. App. 468, 471, 737 S.E.2d 108, 111 (2012) (internal quotations omitted). Under a de novo review, the appellate court considers the matter anew and is free to substitute its judgment for that of the trial court. State v. Williams , 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008).
B. Fatal Variance
Defendant's argument is essentially that there was a fatal variance between the offense charged in the indictment and the jury instruction upon which Defendant was convicted.
It is a well-established rule in this jurisdiction that it is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the bill of indictment. Further, when a variance exists between the bill of indictment and the jury charge, the Court must inquire whether the variance was prejudicial error, and therefore fatal.
State v. Hines , 166 N.C. App. 202, 206, 600 S.E.2d 891, 895 (2004) (citations omitted). "[T]he failure of the allegations [in an indictment] to conform to the equivalent material aspects of the jury charge represents a fatal variance, and renders the indictment insufficient to support that resulting conviction." State v. Williams , 318 N.C. 624, 630-31, 350 S.E.2d 353, 357 (1986) (citation omitted) (emphasis added).
In order to determine whether a variance between an indictment and the corresponding jury instruction was fatal, we must examine the purposes of an indictment. Hines , 166 N.C. App. at 206, 600 S.E.2d. at 895. The four recognized purposes of an indictment are "(1) to identify the crime with which defendant is charged, (2) to protect defendant against being charged twice for the same offense, (3) to provide defendant with a basis on which to prepare a defense, and (4) to guide the court in sentencing." Id. at 206-207, 600 S.E.2d. at 895.
In Hines , this Court held that there was a fatal variance between the indictment and the jury instructions offered at trial. The indictment stated that the defendant intentionally struck the victim with an unknown object, while the jury instructions allowed "the jury to convict [the] defendant on [an] unindicted assault by criminal negligence theory[;]" that the defendant assaulted the victim by driving away in a car when a part of the victim's body was still in the car. Id . at 207, 600 S.E.2d at 896. This Court found the variance between the indictment and the jury instruction to be fatal because it allowed the jury to convict on an entirely different theory than what was charged in the indictment, thus "substantially affect[ing] defendant's ability to prepare a defense." Id .
In the present case, the contested portion of Defendant's indictment for habitual misdemeanor assault is as follows:
FELONY ASSAULT
G.S. [§] 14-33.2 [.]
[Defendant] did unlawfully, willfully and feloniously assault and strike James Willie Kee by striking him on the head with a metal pipe. This assault caused physical injury to the victim consisting of lacerations, bruising, and bleeding from the victim's head.
The elements of habitual misdemeanor assault relevant to this appeal are included in N.C. Gen. Stat. § 14-33.2 (2015):
A person commits the offense of habitual misdemeanor assault if that person violates any of the provisions of [N.C.]G.S. 14-33 and causes physical injury , ... and has two or more prior convictions for either misdemeanor or felony assault, with the earlier of the two prior convictions occurring no more than 15 years prior to the date of the current violation. A conviction under this section shall not be used as a prior conviction for any other habitual offense statute. A person convicted of violating this section is guilty of a Class H felony.
N.C.G.S. § 14-33.2 (emphasis added).
Defendant does not contest that he had two or more prior convictions for assault satisfying that element of N.C.G.S. § 14-33.2. Therefore, in order to convict Defendant pursuant to N.C.G.S. § 14-33.2, the State needed to properly indict and prove that Defendant "violate[d] any of the provisions of [N.C.]G.S. 14-33 and cause[d] physical injury" to Mr. Kee. Id . Relevant to this case, N.C. Gen. Stat. § 14-33 (2015) states: "(a) Any person who commits a simple assault ... is guilty of a Class 2 misdemeanor." N.C.G.S. § 14-33. Therefore, Defendant could have been properly convicted of violating N.C.G.S. § 14-33.2, and committing habitual misdemeanor assault, so long as the State properly indicted and proved that Defendant committed a simple assault against Mr. Kee which resulted in physical injury.
The contested indictment in this case clearly alleges both an assault-rising to the level of at least a simple assault-and that Mr. Kee sustained physical injury therefrom. Defendant does not contest that the evidence presented at trial was sufficient to support this charge. Instead, Defendant argues that the inclusion of the language "by striking [Mr. Kee] on the head with a metal pipe" indicates that the State was not pursuing the charge of habitual misdemeanor assault based upon a violation of N.C.G.S. § 14-33(a), simple assault, but the more serious assault charge contained in N.C.G.S. § 14-33(c)(1) :
(c) Unless the conduct is covered under some other provision of law providing greater punishment, any person who commits any assault ... is guilty of a Class A1 misdemeanor if, in the course of the assault ... he or she: (1) Inflicts serious injury upon another person or uses a deadly weapon ;[.]
N.C.G.S. § 14-33(c)(1) (emphasis added).
We first note there would be no practical point in the State setting a higher burden of proof for itself by attempting to prove violation of N.C.G.S. § 14-33.2 based upon violation of N.C.G.S. § 14-33(c)(1) when all that was required was to prove simple assault pursuant to N.C.G.S. § 14-33(a). Further, the indictment does not include statutory language indicating that the State was intending to prove habitual misdemeanor assault pursuant to N.C.G.S. § 14-33(c)(1), which requires evidence of an assault either inflicting "serious injury" or committed by the use of "a deadly weapon." N.C.G.S. § 14-33(c)(1). First, the indictment only alleges "physical injury" as required by N.C.G.S. § 14-33.2, not "serious injury" as would be required to support a charge based upon the first prong of N.C.G.S. § 14-33(c)(1). "Serious injury" requires proof of the severity of the injury beyond that required by "physical injury." State v. Williams , --- N.C. App. ----, ----, 804 S.E.2d 570, 579 (2017). Second, the indictment does not include any specific allegation that the "physical injury" was accomplished by means of "a deadly weapon." While a metal pipe may certainly qualify as a deadly weapon, comparison with the indictment for the charge of assault with a deadly weapon inflicting serious injury in this case suggests that the State was not intending to make use of a deadly weapon an element of its habitual misdemeanor assault charge. The relevant language in the indictment for AWDWISI is as follows: "[Defendant] did unlawfully, willfully and feloniously use a metal pipe, a deadly weapon , to assault and inflict serious injury upon [Mr.] Kee." (Emphasis added).
As Defendant correctly argues in his brief:
[I]t is sufficient for indictments ... seeking to charge a crime in which one of the elements is the use of a deadly weapon (1) to name the weapon and (2) either to state expressly that the weapon used was a "deadly weapon" or to allege such facts as would necessarily demonstrate the deadly character of the weapon.
State v. Palmer , 293 N.C. 633, 639-40, 239 S.E.2d 406, 411 (1977). The challenged indictment in the present case names a weapon, the pipe, but does not "state expressly that the weapon used was a 'deadly weapon[.]' " Id . Whether the facts alleged in the indictment are sufficient to "necessarily demonstrate the deadly character of the weapon[,]" id ., is not an issue properly before us, but we note the following: "A deadly weapon is 'any article, instrument or substance which is likely to produce death or great bodily harm.' " State v. Rogers , 153 N.C. App. 203, 210, 569 S.E.2d 657, 662 (2002) (citations omitted). In Rogers , this Court held that hands and fists can be deadly weapons, when the manner in which they are used and the relative size and condition of the parties involved is taken into account . Id . at 211, 569 S.E.2d at 663. In the present case, the "pipe" is not described, the relative sizes and conditions of Defendant and Mr. Kee are not described, and the facts concerning the assault with the pipe are as follows: "This assault caused physical injury to the victim consisting of lacerations, bruising, and bleeding from the victim's head."
The language in the indictment concerning the metal pipe was unnecessary to support the charge of habitual misdemeanor assault. "Allegations beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage." State v. White , 202 N.C. App. 524, 529, 689 S.E.2d 595, 598 (2010) (citing State v. Bollinger , 192 N.C. App. 241, 246, 665 S.E.2d 136, 139 (2008) (finding that indictment charging defendant "unlawfully and willfully did carry a concealed deadly weapon while off his premises, to wit: a Metallic set of Knuckles" was sufficient to support conviction for carrying a concealed weapon despite jury instruction that defendant could be convicted if found to be carrying knives) ). See also State v. Muskelly , 6 N.C. App. 174, 176-77, 169 S.E.2d 530, 532 (1969) (citation omitted) ("The use of superfluous words in a bill of indictment should be disregarded. The bill is complete without evidentiary matters descriptive of the manner and means by which the offense was committed. A verdict of guilty, or not guilty, is only as to the offense charged, not of surplus or evidential matters alleged."). The language in the indictment alleging that Defendant hit Mr. Kee with a metal pipe was descriptive rather than an essential element of the assault charged and was, therefore, surplusage. On these facts, we hold that the challenged indictment stated a valid claim for habitual misdemeanor assault based upon violation of N.C.G.S. § 14-33(a). The challenged indictment did not state a claim for habitual misdemeanor assault based upon violation of N.C.G.S. § 14-33(c)(1). Thus, Defendant could not have reasonably believed the State was intending to proceed based solely upon a violation of N.C.G.S. § 14-33(c)(1).
Concerning the contested jury instruction, the trial court originally instructed the jury as follows:
If you find from the evidence beyond a reasonable doubt that on or about the alleged date [D]efendant intentionally assaulted James Willie Kee by striking him with a metal pipe and that [D]efendant thereby caused physical injury to James Willie Kee, nothing else appearing, then it would be your duty to return a verdict of guilty of assault inflicting physical injury.
This instruction unnecessarily required the jury to find that Defendant's assault on Mr. Kee was accomplished by means of a "metal pipe." However, during jury deliberations, the jurors sent a note to the trial court asking if they were required to find that Defendant had used a metal pipe in order to find Defendant had committed an assault. The trial court further instructed the jury as follows:
The second possible verdict that I told you about is assault inflicting a physical injury. Under our law an assault is the application of force to the person of another without his consent. That's the traditional legal definition of an assault: The application of any force, however slight, to the person of another without his consent. An assault can occur without any weapon being used, okay?
So in order to find-to prove that the defendant is guilty of assault inflicting physical injury, they have to prove two things: One, that the defendant intentionally assaulted Mr. Kee, okay? And, second, that he caused a physical injury. They don't have to prove that there was a weapon of any kind utilized.
By means of this instruction, the trial court properly corrected its prior instruction, thereby bringing the instruction in line with the charge of habitual misdemeanor assault based upon violation of N.C.G.S. § 14-33(a). There was no material variance between the indictment and the instruction given.
Even assuming, arguendo , there was a variance between the indictment and the jury instruction, we find no prejudice. Reviewing the four relevant purposes of an indictment as set forth in Hines : "(1) to identify the crime with which defendant is charged, (2) to protect defendant against being charged twice for the same offense, (3) to provide defendant with a basis on which to prepare a defense, and (4) to guide the court in sentencing[,]" Hines , 166 N.C. App. at 206-207, 600 S.E.2d. at 895, we hold that none of these purposes were thwarted by any variance and, therefore, Defendant suffered no prejudice. Id. at 207, 600 S.E.2d at 895.
III. Conclusion
For the reasons stated above, we conclude there was not a fatal variance between the indictment and the instructions given at trial. The trial court did not err in clarifying its previous, erroneous instructions to the jury.
NO ERROR.
Report per Rule 30(e).
Judges CALABRIA and DILLON concur.