STATE OF NORTH CAROLINA v. DAMON DEMOND STAFFORD

No. COA03-760

(Filed 7 September 2004)

**1. Appeal and Error— preservation of issues—failure to argue in brief**

The four assignments of error that defendant failed to argue in his brief are deemed abandoned pursuant to N.C. R. App. P. 28(b)(6).

**2. Sentencing— resentencing—robbery with dangerous weapon—improper alteration of original**

The trial court erred by amending defendant's sentences on the two charges of robbery with a dangerous weapon after the trial court entered a final judgment and after defendant filed a notice of appeal, and the case is remanded for reinstatement of the judgments entered on 29 November 2001 because the purpose of the resentencing was to alter the original sentence.

**3. Appeal and Error— preservation of issues—double jeopardy—failure to object**

Although defendant contends the trial court violated his double jeopardy rights by submitting both counts of robbery with a dangerous weapon to the jury where both indictments reference a taking of the same property but name different victims, this assignment of error is overruled because defend-

ant did not object at trial to the submission of both counts on constitutional grounds.

**4. Burglary and Unlawful Breaking or Entering; Homicide; Robbery— felony breaking or entering—first-degree murder—robbery with dangerous weapon—motion to dismiss— sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charges of double first-degree murder, double robbery with a dangerous weapon, and felony breaking or entering, and by denying defendant's motion to set aside the verdict, because: (1) there was sufficient evidence of two killings committed in the perpetration of a robbery to constitute double first-degree murder; (2) in regard to the robbery with a dangerous weapon charges, defendant provided no evidence to refute the account of how the victims' briefcase containing the family's personal property was taken from the house, and the discrepancy of a victim's testimony is a matter properly left for the jury as the fact finders; and (3) in regard to the felony breaking or entering charge, defendant did not provide any evidence to refute the account of how he came to be present inside the victims' house.

**5. Homicide— first-degree murder—short-form indictment— constitutionality**

The short-form murder indictments used to charge defendant with two counts of first-degree murder were constitutional.

Appeal by defendant from judgments entered 29 November 2001 by Judge Beverly T. Beal in Gaston County Superior Court. Heard in the Court of Appeals 15 March 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Robert C. Montgomery, for the State.*

*Leslie C. Rawls for defendant.*

TIMMONS-GOODSON, Judge.

Damon Demond Stafford ("defendant") appeals his convictions of two counts of first-degree murder, two counts of robbery with a dangerous weapon, and felony breaking or entering. For the reasons that follow, we conclude that there was no error at trial, but vacate the trial court's order amending defendant's sentence, and remand for resentencing.

The evidence presented at trial tends to show the following: On 13 August 1999, Donald James Hunt ("Mr. Hunt"), his wife Janie Pearl Hunt ("Mrs. Hunt"), and their adult son Donald James Hunt, Jr. ("D.J."), were asleep in their home in Gastonia, North Carolina. Mr. and Mrs. Hunt were sleeping in the bedroom and D.J. was sleeping in the living room. The three were awakened by intruders who announced themselves as the police, and ordered Mr. and Mrs. Hunt out of bed and into the living room. One of the intruders asked D.J. if he drove a black Explorer. D.J. answered in the affirmative and the intruder struck him on the back of the head with a gun. All three victims were instructed at gunpoint to lie on the floor. One of the intruders removed jewelry that D.J. was wearing and took money from D.J.'s pocket. The intruders repeatedly asked D.J. questions such as "Where is the money?" and "Where is the stuff?" to which D.J. replied that he had no drugs and no money other than that which was in his pocket.

The intruders began searching the house and demanded more money. D.J. told them that money could be found upstairs. One of the intruders took Mrs. Hunt with him to the upstairs bedroom where he searched for money. After failing to locate any money, the intruder returned Mrs. Hunt to the living room and the three intruders began threatening to kill the victims. A struggle ensued between D.J., Mr. Hunt and the intruders. The altercation between Mr. Hunt and intruder Devan Lashawn Bynum ("Bynum") progressed into a nearby bedroom. D.J. testified that at that point, defendant walked to the door of the bedroom and began firing a gun into the room. D.J. then saw defendant take a briefcase belonging to the family and run out of the rear door, followed by the third intruder. Mr. Hunt and Bynum died as a result of the gunshot wounds.

At trial, defendant was convicted of two counts of first-degree murder in the deaths of Mr. Hunt and Bynum, two counts of robbery with a dangerous weapon, and breaking or entering. On 29 November 2001, defendant was sentenced to life imprisonment without parole for each count of first-degree murder, seventy-five months to ninety-nine months for each count of robbery with a dangerous weapon, and ten to twelve months for felony breaking or entering. The trial court ordered these sentences to be served consecutively.

Defendant entered a notice of appeal to this Court on 29 November 2001. Eight months later, on 15 July 2002, the trial court reconvened for a "resentencing hearing" at which time the trial court entered "corrected judgment" and commitment worksheets, amend-

STATE v. STAFFORD

[166 N.C. App. 118 (2004)]

ing defendant's sentence to a term of seventy-seven months to 102 months for each count of robbery with a dangerous weapon. Defendant appeals these convictions and amended sentences.

[1] As an initial matter, we note that defendant's brief contains arguments supporting only five of the original nine assignments of error on appeal. The four omitted assignments of error are deemed abandoned pursuant to N.C.R. App. P. 28(b)(6) (2004). We therefore limit our review to those assignments of error addressed in defendant's brief.

The remaining issues presented on appeal are whether the trial court erred by (I) amending defendant's sentences on the charges of robbery with a dangerous weapon after defendant's notice of appeal; (II) submitting both counts of robbery with a dangerous weapon to the jury; (III) denying defendant's motions to dismiss and motion to set aside the verdict; and (IV) proceeding to trial on short-form murder indictments.

[2] In his first assignment of error, defendant argues, and the State concedes, that the trial court erred by amending defendant's sentences on the two charges of robbery with a dangerous weapon after the trial court entered a final judgment, and after defendant filed a notice of appeal.

The law is well established in this State that

the [trial] court has inherent power to amend judgments by correcting clerical errors or supplying defects so as to make the record speak the truth. The correction of such errors is not limited to the term of court, but may be done at any time upon motion, or the court may on its own motion make the correction when such defect appears. But this power to correct clerical errors and supply defects or omissions must be distinguished from the power of the court to modify or vacate an existing judgment. And the power to correct clerical errors after the lapse of the term must be exercised with great caution and may not be extended to the correction of judicial errors, so as to make the judgment different from what was actually rendered.

*Shaver v. Shaver*, 248 N.C. 113, 118, 102 S.E.2d 791, 795 (1958) (citations omitted).

In the case *sub judice*, after hearing penalty phase evidence, the trial court entered findings of aggravating factors for both counts of

robbery with a dangerous weapon. Accordingly, the trial court had the statutory authority to "impose a sentence that is permitted by the aggravated range described in G.S. 15A-1340.17(c)(4)." N.C. Gen. Stat. § 15A-1340.16(b) (2003). Given that robbery with a dangerous weapon is a class D felony, *see* N.C. Gen. Stat. § 14-87 (2003), and that defendant was a prior record level II offender, the authorized aggravated sentence was seventy-seven to ninety-five months. N.C. Gen. Stat. § 15A-1340.17(c)(4) (2003). However, the judgment imposed by the trial court sentenced defendant to a term of seventy-five to ninety-nine months for each count of robbery with a dangerous weapon. This sentence falls within the presumptive range of sixty-one to seventy-seven months. *Id.*

On 15 July 2002, the trial court convened for a resentencing hearing, at which time the judge stated the following:

In case 99 CRS 29086, the Court found the Defendant had been convicted of robbery with a dangerous weapon of Donald James Hunt, a Class D felony, prior record level II. The Court indicated that . . . aggravating factors were found. The Court did not make any findings in mitigation. At that point the Court sentenced the Defendant to a sentence of not less than 75 nor more than 99 months. That sentence is not from the aggravated range. That sentence is from the presumptive range.

. . . .

So the problem in 99 CRS 29086 is that the Defendant was sentenced in the inappropriate range. Then the Court sentenced the Defendant in regard to robbery with a dangerous weapon of Donald James Hunt, Jr., a Class D felony, prior record level II. The Court indicated that the same aggravating factors that had previously been found in 99 CRS 29087 were also found as to this charge. The Court made no findings in mitigation and did not intend to find and did not find that there were any mitigating factors, and the Court then imposed another sentence of 75 months minimum, 99 months maximum, which also was not in the aggravated range but was in the presumptive range which was not the correct sentencing procedure.

The judge proceeded to increase the sentence for each count of robbery with a dangerous weapon to a term of seventy-seven months to 102 months.

The State has conceded that the trial court was acting under a misapprehension. The State has not argued that the original sentence was error. Thus, we conclude that the purpose of the resentencing was to alter the original sentence from that which was rendered on 29 November 2001. Accordingly, we vacate the trial court's judgments entered on 15 July 2002, and remand this case for the trial court to reinstate the judgments entered on 29 November 2001.

**[3]** Defendant next assigns error to the trial court for submitting both counts of robbery with a dangerous weapon to the jury where both indictments reference a taking of the same property, but name different victims. Defendant argues that he was unlawfully convicted of both counts of robbery with a dangerous weapon in violation of the laws against Double Jeopardy and in the face of insufficient evidence. We disagree.

As an initial matter, we note, and defendant concedes, that defense counsel did not object to the submission of both counts of robbery with a dangerous weapon to the jury at trial on constitutional grounds. Defendant may not raise the constitutional issue of Double Jeopardy for the first time on appeal. *State v. Scott*, 99 N.C. App. 113, 116-17, 392 S.E.2d 621, 623 (1990), *appeal dismissed and rev. granted by* 327 N.C. 486, 397 S.E.2d 234 (1990), *aff'd in part and rev'd in part by* 331 N.C. 39, 413 S.E.2d 787 (1992). Because defendant failed to raise the Double Jeopardy issue at trial, we decline to review the issue on appeal. We discuss *infra* the question of whether the trial court erred by denying defendant's motions to dismiss the charges of robbery with a dangerous weapon due to insufficient evidence.

**[4]** Defendant argues that the trial court erred by denying his motions to dismiss all charges and motion to set aside the verdict. We disagree.

In ruling on a motion to dismiss based on insufficiency of evidence, the trial court must determine whether there is substantial evidence of each element of the offense charged. *See State v. Bullard*, 312 N.C. 129, 160, 322 S.E.2d 370, 387 (1984). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). When reviewing the evidence, the trial court must consider even incompetent evidence in the light most favorable to the prosecution, granting the State the benefit of every reasonable inference. *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587

(1984). Any contradictions or discrepancies in the evidence should be resolved by the jury. *Id.* "The standard of review of a trial court's denial of a motion to set aside a verdict for lack of substantial evidence is the same as reviewing its denial of a motion to dismiss." *State v. Duncan*, 136 N.C. App. 515, 520, 524 S.E.2d 808, 811 (2000) (citing *State v. Young*, 120 N.C. App. 456, 462 S.E.2d 683 (1995)).

In the case *sub judice*, defendant was convicted of five crimes. Upon review, we analyze the sufficiency of the evidence as to each offense.

Defendant was convicted of first-degree murder in the death of Devan Lashawn Bynum. First-degree murder is defined by statute as a "willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon." N.C. Gen. Stat. § 14-17 (2003).

At trial, D.J. testified that the intruders became frustrated when they could not find money in the house, and threatened to kill Mr. Hunt, Mrs. Hunt and D.J. Mr. Hunt, who was lying on the floor, jumped up, grabbed Bynum, and wrestled him into the bedroom. At trial, D.J. described the sequence of events as follows:

A: Stafford was beside me holding my father; but when my father jumped up and grabbed Bynum, Stafford went in the room after him.

Q: Okay. . . . What happened after Stafford went in the other room?

A: I could see him standing right there in the doorway, and then I heard like maybe five or six shots.

Q: Okay. Did you see who was doing the shooting?

A: He was right there in the doorway, yes.

Q: Who was shooting?

A: Stafford.

D.J. testified that he did not see Bynum in the house after the shooting. D.J. then testified that when he saw defendant and the third intruder run out of the house, he retrieved his brother's handgun from a cabinet and ran out of the front door where he observed the three

men running side-by-side down the street. He testified that Bynum was between the other two men.

The Hunts' neighbor, Kathryn Wilson ("Wilson"), testified that after the shooting, she observed three men running down the street. All three were carrying guns, and one was carrying a briefcase. Wilson testified that one of the men was running with a limp.

Bynum's girlfriend, Shamona Brice ("Brice"), testified that at or around 3:00 p.m. on 13 August 1999, she was at her home when her brother came in the house and had clothes in his hand that she recognized as the clothes that Bynum was wearing that day.

Thomas Olofsson ("Olofsson") and Teresa Nolan ("Nolan") were neighbors of defendant's girlfriend at the time. Each testified that mid-afternoon on 13 August 1999, defendant drove a car onto their property with two passengers in the car. Olofsson testified that the passenger in the front seat was "lethargic." Olofsson and Nolan testified that defendant asked Nolan to call 9-1-1 as Olofsson helped to pull the front-seat passenger out of the car. Olofsson testified that he did not notice any injuries on the front-seat passenger, but that there was blood on the seat of the car. Olofsson and Nolan testified that the front-seat passenger was wearing only boxer shorts, which he took off when he got out of the car. Nolan testified that someone then said, "Get back in the car. You have been shot." Nolan, who at this time was calling for an ambulance, testified that "after we called 9-1-1 and got them on the phone [defendant] was like never mind, we'll take him to the hospital."

Reed Moore ("Moore") was a security officer at Carolinas Medical Center in Charlotte, North Carolina. Moore testified that on 13 August 1999 at around 3:30 p.m., he was posted in the emergency room when the following events occurred:

> A: [T]wo gentlemen came into the emergency room. They was [sic] driving a vehicle and pulled up to the front door. They offloaded another individual—one had his feet, and one had his head—and brought him to the emergency room door. I said, "Do you need help?" He had been shot. We carried him to the emergency room and placed him on a bed in the emergency room, and they took out and left out the door.
>
> Q: Did they say anything prior to leaving out of the door?
>
> A: No, they didn't.

Q: Okay. And what happened after that?

A: They got in their car and left.

. . . .

Q: Could you describe the three gentlemen that came in?

A: Okay. Two of the gentlemen—they was [sic] dressed casually, but the third person that was—that had been shot didn't have any clothes on.

Dr. James Michael Sullivan ("Dr. Sullivan"), the pathologist who performed the autopsy on Bynum, testified that Bynum suffered two gunshot wounds, and that one of those gunshot wounds was a fatal injury. Dr. Sullivan pronounced Bynum dead at 3:36 p.m.

We conclude that this is sufficient evidence of a killing committed in the perpetration of a robbery to constitute first-degree murder. Defendant provided no evidence to refute this account of Bynum's death. Therefore, viewing this evidence in the light most favorable to the State, we hold that the trial court properly denied defendant's motion to dismiss the first-degree murder charge in the death of Bynum and the motion to set aside the verdict.

Defendant was also convicted of first-degree murder for the death of Mr. Hunt. Again we highlight D.J.'s testimony about the shooting of his father during the course of the armed. robbery, recounted *supra*. Mrs. Hunt testified that after defendant and the two other intruders left the house, she went into the bedroom where Mr. Hunt was lying on the floor. She stated that "[h]e was bleeding and rolling, and he told me to put a pillow under his leg. He couldn't feel his leg." Dr. Peter Whittenberg ("Dr. Whittenberg"), the pathologist who performed the autopsy on Mr. Hunt, later testified that Mr. Hunt suffered four gunshot wounds, and "[t]he cause of death on Mr. Hunt was blood loss or hemorrhaging due to a gunshot wound to the abdomen."

Once again, we conclude that this is sufficient evidence of a killing committed in the perpetration of a robbery to constitute first-degree murder. Defendant provided no evidence to refute this account of Mr. Hunt's death. Therefore, viewing this evidence in the light most favorable to the State, we hold that the trial court properly denied defendant's motion to dismiss the first-degree murder charge in the death of Mr. Hunt and the motion to set aside the verdict.

Defendant was also convicted of robbery with a dangerous weapon of Mr. Hunt. A person is deemed to have committed robbery with a dangerous weapon when that person,

> having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution . . . .

N.C. Gen. Stat. § 14-87 (2003).

At trial, D.J. testified that defendant and two others held him, Mr. Hunt and Mrs. Hunt at gunpoint as they searched the house. D.J. testified that after defendant shot Mr. Hunt, defendant entered the bedroom where Mr. Hunt was lying wounded on the floor, "grabbed the briefcase and ran from the bedroom back through the living room back out the back door." He stated that the briefcase contained documents belonging to each of the family members, including "[c]ar titles, insurance papers, [and] important stuff that the family just kept in the briefcase." Defendant provided no evidence to refute this account of how the briefcase containing the family's personal property was taken from the house. Therefore, viewing this evidence in the light most favorable to the State, we hold that the trial court properly denied defendant's motion to dismiss this charge and motion to set aside the verdict.

Defendant was also convicted of robbery with a dangerous weapon of D.J. At trial, D.J. first testified that another intruder took the money from his pocket, then he testified that he couldn't remember if defendant or the other intruder was the person who took the money from his pocket. Defendant provided no evidence to clarify how D.J.'s money was taken. The State also provided additional evidence on this charge in that, in addition to the money taken from D.J.'s pocket, D.J. also saw defendant remove the briefcase containing his family's personal documents from the house. Therefore, viewing this evidence in the light most favorable to the State, we hold that the trial court properly denied defendant's motion to dismiss the charge of robbery with a dangerous weapon of D.J. as the discrepancy in D.J.'s testimony is a matter properly left for the jury as the finders of fact. We also hold that the trial court properly denied the motion to set aside the verdict.

Defendant's final conviction was for felony breaking or entering. This charge is appropriate where a person "breaks or enters any building with intent to commit any felony or larceny therein." N.C. Gen. Stat. § 14-54 (2003).

> Evidence of a breaking when available is relevant, but the absence of such evidence is not a fatal defect of proof to support a conviction of breaking and entering under G.S. 14-54 where there is proof of entry. Nor is proof of entry where there is proof of breaking necessary to support a conviction on a charge of breaking and entering under the statute.

*Blakeney v. State*, 2 N.C. App. 312, 317, 163 S.E.2d 69, 72 (1968) (citations omitted).

At trial, Mrs. Hunt testified as follows: "I was asleep; and a noise woke me up; and looking from the bed toward the kitchen and a guy was coming toward me with a gun saying 'Police. Police.' " When asked to elaborate on the noise, Mrs. Hunt said "[j]ust a loud noise like thunder or something—a loud noise. It just woke me up." D.J. testified that he heard "a loud noise like an explosion. . . . It came from the back, but I couldn't see because the kitchen door was shut. . . . I heard someone say, 'Police. Police. Get down.' " He said that at that time a man with a gun walked into the room. Two of the investigating officers testified that when they arrived at the house, "the back door was broken, it wouldn't close anymore," and "the molding around the back door was laying in the floor in front of the back door." Immediately upon entering the house, defendant and the other intruders threatened the victims and demanded money and drugs.

Defendant did not provide any evidence to refute this account of how he came to be present inside the Hunts' house. Therefore, viewing this evidence in the light most favorable to the State, we hold that the trial court properly denied defendant's motion to dismiss and motion to set aside the verdict on this charge.

**[5]** Defendant's last assignment of error states that the trial court erred by proceeding to trial on short-form murder indictments in violation of defendant's constitutional rights. We disagree.

Our Supreme Court has consistently held that short-form murder indictments are constitutionally sound. *State v. Hunt*, 357 N.C. 257, 278, 582 S.E.2d 593, 607, *cert. denied*, 539 U.S. 985, *petition denied*, 539 U.S. 985 (2003); *see also State v. Wallace*, 351 N.C. 481, 504, 528

S.E.2d 326, 341 (upholding short-form indictment for murder), *cert. denied*, 531 U.S 1018 (2000), *reh'g denied*, 531 U.S. 1120 (2001). Accordingly, we decline to address this assignment of error as it is without merit.

No error in trial, vacate and remand for reséntencing.

Judges LEVINSON and THORNBURG concur.